1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THE HONORABLE MARSHA J. PECHMAN**

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| **JANE DOE, an individual,**<br><br>*Plaintiff,*<br><br>**vs.**<br><br>**AMAZON.COM, INC, a Delaware corporation, and**<br><br>**IMDB.COM, INC., a Delaware corporation,**<br><br>*Defendants.* | **No.  2:11-cv-01709-MJP**<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**<br><br><u>**NOTE FOR CONSIDERATION:**</u> **FRIDAY, DECEMBER 2, 2011** |

COMES NOW Plaintiff Jane Doe, an individual, and requests this Court deny Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) ("Motion to Dismiss") and presents this brief in opposition to that motion in support of her request.

## I.  INTRODUCTION

Plaintiff is an actress who uses a stage name.  Compl. (Dkt. No. 1) ¶¶ 16-17.  Throughout her entire career, Plaintiff has kept her actual identity separate from her stage identity—she has gone to great efforts to ensure that her stage name is in no way associated with her actual identity in any public source.  *Id.* at ¶¶ 8, 26.  Defendants operate the Internet Movie Database ("IMDb"), which is a resume tool for members of the entertainment industry.  *Id.* at ¶ 1.  Defendants'

DOZIER INTERNET LAW, P.C.

website offers a subscription service called "IMDbPro," which offers "industry insider" information to paying customers. *Id.* at ¶ 2.  Plaintiff subscribed to IMDbPro, but in so doing was required to provide Defendants with personal and credit card information. *Id.* at ¶ 2, 20. Defendants represented to Plaintiff that such information would be used solely for purposes of payment processing. *Id.* at ¶¶ 2-3.  Beyond Plaintiff's consent, Defendants then further used that information to scour other sources to obtain additional personal information about Plaintiff, which they published to her stage-name profile on the IMDb.com website. *Id.* at ¶¶ 6, 25, 27. Specifically, Defendants published Plaintiff's actual date of birth on their website. *Id.* at ¶¶ 21, 25.  Plaintiff looks much younger than she actually is and publishing her date of birth on the IMDb.com website has had a two-fold negative effect on her livelihood and career as an actress. *Id.* at ¶ 30.  First, because lesser-known forty-year-old actresses are not in high demand in the entertainment world, Plaintiff has suffered a substantial decrease in acting credits and opportunities, and therefore earnings. *Id.*  Second, because Plaintiff looks so much younger than her profile now indicates, she has been rejected for each forty-year-old role for which she has auditioned because she cannot physically portray a forty-year-old woman. *Id.*

Plaintiff shared confidential and sensitive information with Defendants for a limited purpose.  Defendants used that information beyond that permitted purpose.  Plaintiff did not grant Defendant unfettered access to her information.  However, Defendants acted as though she did.

Plaintiff filed a Complaint in the instant action on October 13, 2011 (Dkt. No. 1). Therein she alleged four causes of action: (1) breach of contract, (2) fraud, (3) violation of the Washington Privacy Act, and (4) violation of the Washington Consumer Protection Act. Defendants filed the instant Motion to Dismiss on November 9, 2011 (Dkt. No. 15), arguing that Plaintiff has failed to state a claim upon which relief may be granted.  Plaintiff has, however, adequately pled the elements and factual support for each cause of action and this Court should therefore deny Defendants' Motion to Dismiss.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a proper pleading to contain a "short and

1   plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, *Iqbal*, and

2   their progeny have changed the landscape of motions practice by requiring pleading standards

3   somewhat heightened above the liberal standard suggested by the language of Rule 8.  To

4   survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter,

5   accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

6   U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

7   570 (2007)).  A plaintiff must "plead[] factual content that allows the court to draw the

8   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

9   *Twombly*, 550 U.S. at 556).  A complaint must present "more than the mere possibility of

10  misconduct." *Id.* at 1950.  The complainant must allege facts sufficient to establish plausible

11  grounds for the Court to determine the defendants acted wrongfully.  "Specific facts," however,

12  "are not necessary;" a plaintiff's complaint "need only 'give the defendant fair notice of what . . .

13  the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

14  (quoting *Twombly*, 550 U.S. at 555).

15       What *Tombly* and *Iqbal* have not changed is that in ruling on a 12(b)(6) motion to

16  dismiss, the Court is to take as true Plaintiff's factual allegations.  *See Iqbal*, 129 S. Ct. at 1949-

17  50; *see also Twombly*, 550 U.S. at 555-56; *Erickson*, 551 U.S. at 94 ("[W]hen ruling on a

18  defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained

19  in the complaint.").  "[A] court should assume the[] veracity" of "well-pleaded factual

20  allegations." *Iqbal*, 129 S. Ct. at 1950.  As the Supreme Court noted in *Twombly*, "[a]sking for

21  plausible grounds to infer an agreement does not impose a probability requirement at the

22  pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery

23  will reveal evidence of" Defendants' misconduct.  550 U.S. at 556.  "[A] a well-pleaded

24  complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

25  improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation omitted).

26       Defendants quote several fact allegations in the Complaint and declare them to be

27  conclusory and without factual support.  For example, Defendants cite paragraphs 26 (alleging

28  that there were absolutely no means by which Defendants could have obtained Plaintiff's legal

---

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 3

**DOZIER INTERNET LAW, P.C.**

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

name or date of birth) and 27 (alleging that IMDb obtained Plaintiff's date of birth by performing record searches using Plaintiff's credit card information obtained during her subscription to IMDbPro) and claim they are "conclusions without any factual support." Motion to Dismiss 9. As noted (and emphasized) by Defendants, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949; *see also* Motion to Dismiss 10. These, however, are not legal conclusions. They may be conclusory in the sense that this is the nature of a factual statement (i.e., Plaintiff is neither exclaiming nor asking a question), however, they are to be afforded a presumption of truth— even if a savvy judge believes proving them may be unlikely or improbable. *See Twombly*, 550 U.S. at 556. Under Defendants' logic, factual statements alleged in complaints need to be supported with further factual statements, which themselves then would need to be supported with *further* factual statements. This defies Rule 8(a)(2)'s requirement that a complaint contain "a short plain statement of the claim showing that the pleader is entitled to relief." Plaintiff need not prove her entire case in her first pleading—specific facts are not necessary at this stage of litigation. *Erickson*, 551 U.S. at 93. Thus, although Defendants label Plaintiff's factual allegations as "naked, and implausible," Motion to Dismiss 2, as well as "unsupported, implausible, [and] hypothetical," *id.*, the standard is not whether the factual allegations themselves are true or even plausible. Rather, the question now presented to this Court is whether the factual allegations, *if true*, plausibly *entitle Plaintiff to relief*.[1]

Where, as here, a complaint contains both factual allegations and legal conclusions, the Court should follow the two-part approach envisioned by *Twombly*. First, the Court may pull aside Plaintiff's legal conclusions (i.e., that Defendants acted "unlawfully") because they are not entitled to the assumption of truth. Second, the Court should address the "well-pleaded, nonconclusory factual allegation[s] of parallel behavior" (i.e. those that allege *how* Defendants acted unlawfully without stating a legal conclusion) "to determine whether [they] g[i]ve rise to a

---

[1] In Part III(B) of their Motion to Dismiss, Defendants, without citing any legal support, argue that Plaintiff's Complaint should be dismissed under Rule 12(b)(6) because she voluntarily disclosed information to Defendants. Defendants' argument sounds in affirmative defense—it is not an argument that Plaintiff failed to state a claim, which is the standard under Rule 12(b)(6) pursuant which Defendants bring this motion. This affirmative defense is inappropriate at this juncture.

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 4

DOZIER INTERNET LAW, P.C.

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

1   'plausible suggestion of [unlawful behavior].'" *Iqbal*, 129 S. Ct. 1950 (quoting *Twombly*, 550

2   U.S. at 565-66).  Below, Plaintiff considers each cause of action pled in turn—the Court should

3   find that Plaintiff has met her burden under Rule 8, as interpreted by *Twombly* and *Iqbal* and

4   their progeny, as to each cause of action pled and should therefore deny Defendants' Motion to

5   Dismiss.

6                                    **III.  ARGUMENT**

7          Plaintiff's Complaint goes beyond a mere "defendant-unlawfully-harmed-me

8   accusation."  *See Iqbal*, 129 S. Ct. 1249.  Her Complaint is more than a "formulaic recitation of

9   the elements of [the] cause[s] of action" alleged.  *See id.*  Instead the Complaint states sufficient

10  allegations of parallel behavior that they each rise to a plausible allegation that Plaintiff is

11  entitled to relief.  Taking each cause of action in turn, Plaintiff has met her burden under Rule 8

12  and *Twombly* and *Iqbal*.

13              **A.  Plaintiff States a Valid Cause of Action for Breach of Contract**

14         Plaintiff relies on the contents of Defendants' IMDbPro Subscriber Agreement, which

15  incorporates by reference Defendants' Privacy Notice making it part of the contract, *e.g.*, *Satomi*

16  *Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 801, (2009) (together the documents will be

17  referred to as the "Agreement"), and also relies on statements found on the IMDb.com website.

18  Therefore, as noted by Defendants, these documents may be treated as part of the Complaint and

19  their contents may be considered by the Court on Defendants' Motion to Dismiss.  *See, e.g.*,

20  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Defendants have offered the *current*

21  version of the Agreement that a user of the IMDbPro service can access on the IMDb.com

22  website *today*.  *See* Declaration of Ashley A. Locke in Support of Defendants' Motion to

23  Dismiss (Dkt. No. 16) ("Locke Decl."), ¶¶ 2-3 (noting that the attached exhibits were accessed

24  through the IMDb.com website on November 9, 2011).  The relevant Agreement is the one

25  operable at the time of the breach, alleged to have occurred in 2008 when Plaintiff used her

26  credit card to pay for the IMDbPro service.  Defendants have not averred that the version of the

27  Agreement produces is in fact the version operable at the time of Plaintiff's subscription to

28  IMDbPro.  The only way for Plaintiff to access the Agreement is through the IMDb.com website,

1    much like Defendants' counsel likely did.  Access to the operable Agreement is in Defendants'

2    control.  Plaintiff has nonetheless properly stated a claim for breach of contract in light of the

3    language in the Agreement submitted by Defendants.

4         To properly state a claim for breach of contract in Washington, a plaintiff must allege (1)

5    a valid contract, (2) a breach of duty arising under that contract, and (3) resulting damage.

6    *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1187 (W.D. Wash. 2010).  When an

7    alleged contract requires performance by both parties, a plaintiff alleging nonperformance by the

8    other party must establish her own performance.  *Id.*[2]

9         First, Plaintiff has alleged a valid contract.  Plaintiff alleged that she and Defendants

10   entered into a contractual relationship governed by the Subscriber Agreement and incorporated

11   Privacy Notice when she subscribed to the IMDbPro service.  Compl. ¶ 36; *see also id.* at ¶ 2

12   (alleging that to subscribe to the IMDbPro service, a consumer must accept the Subscriber

13   Agreement and incorporated Privacy Notice—a consumer cannot subscribe without doing so).

14   The Agreement, incorporated into the Complaint by reference, states, "[t]he Agreement below is

15   the agreement you consented to upon subscribing to the [IMDbPro] site."   The Complaint goes

16   beyond merely stating a contract existed by specifically referencing the governing document and

17   describing when the parties entered into the Agreement.

18        Second, Plaintiff has alleged the breach of a duty arising under the alleged contract.  This

19   necessitates a two-part allegation: (1) a duty established by the contract and (2) breach of that

20   duty.  Plaintiff has pled two theories of duty and breach.  First, Plaintiff has alleged that the

21   contract states that Defendants will always comply with applicable laws and regulations when

22   they handle Plaintiff's information.  *See* Compl. ¶ 3; *see also id.* at ¶ 39.  Plaintiff alleged that

23   Defendants breached that duty by violating the Washington Privacy Act as well as the

24

25   [2] Defendants suggest that Plaintiff must also "allege that the defendant breached a specific contractual provision or
26   term, rather than merely a general duty of care." Motion to Dismiss 12 (citing *Bank of Am. NT & SA v. Hubert*, 153
     Wn.2d 102, 124 (2004); *Brown v. Pac. Dev. Concepts*, No. 42569-2-I, 1999 Wash. App. LEXIS 840, at *3 (Wash.
27   Ct. App. 1999)). These cases do not stand for that proposition. Rather, they distinguish between claims that arise
     under contract law and those that arise under tort law: "An action sounds in contract when the act complained of is a
     breach of a specific term of the contract, without reference to the legal duties imposed by law on that relationship."
28   *Bank of Am.*, 153 Wn.2d at 124. For a breach of contract claim to survive, a plaintiff must point to a duty arising
     under the contract, but these cases do not establish some heightened obligation as suggested by Defendants.

1   Washington Consumer Protection Act.  Plaintiff has alleged sufficient facts to establish that she

2   is plausibly entitled to relief under those statutes.  *See infra*.  If the facts pled are true, then

3   Plaintiff is entitled to relief under a breach of contract theory as well.  Second, Plaintiff has

4   alleged that she provided her personal and credit card information to Defendants for the purpose

5   of processing payment.  Compl. ¶ 2; *see also id.* at ¶¶ 3, 20.  As Defendants note, the privacy

6   policy establishes the scope of permissible use by Defendants of Plaintiff's information.  *See*

7   Motion to Dismiss 5-6.  Plaintiff alleged that Defendants breached the scope of permissible use

8   by using her credit card information in a way beyond that which was permitted.  Compl. ¶¶ 6,

9   27-28, 38-39.  Specifically, Plaintiff alleged that Defendants used her personal and credit card

10  information beyond the purposes of processing payment and instead for researching Plaintiff's

11  background.  *See id.*  Plaintiff alleged Defendants used the information to build a consumer

12  profile of Plaintiff, *see id.* at ¶ 38, and did so by using her information to scour other sources to

13  gather additional information about her, *see id.* at ¶¶ 6, 27-28.

14          Defendants argue that the Agreement "specifically authorize(s) IMDb.com to use

15  information provided by Plaintiff."  Motion to Dismiss 13.  The language of the contract does

16  not, however, permit Defendants unfettered use of Plaintiff's credit card and personal

17  information provided for purposes of processing payment.   Washington courts follow the

18  objective manifestation theory of contract interpretation.  "Under this approach, [courts] attempt

19  to determine the parties' intent by focusing on the objective manifestations of the agreement"

20  and "impute an intention corresponding to the reasonable meaning of the words used."  *Hearst*

21  *Commc'ns, Inc. v. Seattle Times*, 154 Wn.2d 493, 503 (2005).   Where the terms of a contract

22  viewed in its entirety are plain and unambiguous, the Court should deduce the meaning of the

23  contract from its language alone.  *Dickson v. Hausman*, 68 Wn.2d 368, 371 (1966) (citing *Boeing*

24  *Airplane Co. v. Firemen's Fund Indem. Co.*, 44 Wn.2d 488, 496 (1954)).  "'But where the

25  language of a contract is ambiguous or susceptible of more than one meaning, it is the duty of the

26  court to search out the intent of the parties by viewing the contract as a whole and considering all

27  of the circumstances surrounding the transaction, including the subject-matter and the subsequent

28  acts of the parties.'"  *Id.* (quoting *Boeing*, 44 Wn.2d at 496).  In this instance, the Agreement

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 7

**DOZIER INTERNET LAW, P.C.**

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

contains ambiguous terms—in particular, the Privacy Notice states that Defendants "use information that [subscribers] provide for such purposes as responding to [subscribers'] requests, customizing future browsing for [subscribers], improving our site, and communicating with [subscribers]." *See* Locke Decl. Exhibit B (Dkt. 16-1). The term "improving our site" is vague, ambiguous and can mean any number of things. Defendants ask the court to adopt the most expansive meaning: any information provided by subscribers can be used in any manner so long as it is for the good of the IMDb.com website. However, the term is sandwiched between terms that call for much more innocuous uses and this suggests it too has a more narrow, less potentially harmful meaning. Moreover, just above this term, the contract reads: "The information we learn from users helps us personalize and continually improve *your* experience at IMDb." *Id.* (emphasis added). This also suggests that the term "improving our site" does not mean that subscribers agree to allow Defendants to use their personal and credit card information provided for payment processing to create consumer profiles of them in order to enhance Defendants' database. The policy suggests that "improving our site" means to make the experience better for *users*. Because this term is ambiguous and subject to multiple meanings, the Court cannot decide as a matter of law what the contract terms mean at this stage. Rather, the Court should consider all of the circumstances surrounding the transaction between Plaintiff and Defendants. *See Dickson*, 68 Wn.2d at 371. Plaintiff has adequately alleged that the agreement between the parties does *not* permit Defendants to use her credit card information beyond the purpose of processing payment.

To the extent that the contract may be read by its contents alone, its very terms suggest that, as Plaintiff claims, Plaintiff did not give Defendants authorization to use her credit card information to use as a research tool to search for further information about her to add to their website. It is clear by the language in the contract as a whole that credit card and personal information collected for payment processing is not among the types of information Plaintiff agreed that Defendants could store and use. Although the Privacy Notice states that Defendants may receive and store information provided to Defendants, the Notice then directs users, via a hyperlink, to a statement of the types on information Defendants collect and how such

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 8

DOZIER INTERNET LAW, P.C.

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

information might be used.  *See* Locke Decl. Ex. C (Dkt. No. 16-1).  Credit card information is not among the types referenced.  Nor is information collected during subscription to Defendants' IMDbPro service referenced.[3]  Additionally, the Privacy Policy states that users can choose not to provide certain information, but that if they so choose, they will not be able to take advantage of many of Defendants' IMDbPro features.  Locke Decl. Exhibit B (Dkt. No. 16-1).  Credit card information certainly cannot be included in the scope of the types of information Plaintiff agreed to permit Defendants to use.  A user cannot take advantage of *any* of IMDbPro's features without providing credit card information.  *See* Compl. ¶ 2.  The personal and credit card information provided by Plaintiff for payment which she alleged Defendants misused is not the type anticipated by and within the scope of the information covered by the contract terms.  Plaintiff agreed to permit Defendants to use some information she provided to them in limited ways.  She has alleged Defendants breached the agreement by using information and in ways outside of the scope of that agreements and with sufficient detail of the alleged behavior to put Defendants on notice of the nature of her claim.

Finally, Plaintiff has alleged resulting damage caused by Defendants' breach.  After breaching their Agreement with Plaintiff, Defendants acted further by publishing information obtained in their research on their website.  *See id.* at ¶¶ 6, 39.  Because Defendants published Plaintiff's birth date on their website, Plaintiff has suffered a substantial decrease in acting credits.  *Id.* at ¶¶ 30, 41; *see also id.* at ¶ 22.  In sum, Plaintiff has alleged facts sufficient to support each element of a cause of action for breach of contract.  Taken as true, the allegations in the Complaint would entitle Plaintiff to relief and Defendants' Motion to Dismiss should be denied.

**B.  Plaintiff States a Valid Cause of Action for Fraud**

To adequately plead a claim of fraud, a plaintiff must allege nine elements:

---

[3] Information provided on the registration form is referenced.  However, registration and subscription are different processes.  Plaintiff *registered* on the IMDb.com website in 2003 when she created an account profile. *See* Compl. ¶ 19.  She *subscribed* to IMDbPro—that is, upgraded to the pay-service—in 2008. *See id.* at ¶ 20.

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 9

DOZIER INTERNET LAW, P.C.

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Adams v. King County*, 164 Wn.2d 640, 662 (2008).  Federal Rule of Civil Procedure 9(b) and Washington law requires Plaintiff to plead the circumstances constituting fraud with particularity.  *See, e.g., Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 165 (1987).  "[A] complaint must allege specific fraudulent acts, but need not plead evidentiary matters"—it will be deemed to have "adequately allege[d] fraud if it informs the defendant of who did what, and describes the fraudulent conduct and mechanisms." *Id.*  Essentially, a plaintiff must state the time, place and content of the misrepresentations subject of the fraud claim and must state the identities of the parties to those misrepresentations.  *Misc. Serv. Workers v. Philco-Ford Corp., WDL Div.,* 661 F.2d 776, 782 (9th Cir. 1981).  Plaintiff has pled the elements of fraud in her Complaint and with the required particularity.

Plaintiff has alleged that Defendants misrepresented the safety, security and purpose for which they gathered and used her credit card information.  Compl. ¶ 46.  Specifically, Plaintiff alleged that Defendants made the following representations to Plaintiff during the subscription process through the Agreement and on the IMDbPro website:

- "We guarantee that every transaction you make at IMDbPro.com will be safe."
- "IMDb knows that you care how information about you is used and shared, and we appreciate your trust that we will do so carefully and sensibly."
- "Further, whenever we deal with user information, we will always comply with applicable laws and regulations in doing so."
- "Payment processing is powered by Amazon.com."
- "Our secure socket lawyer (SSL) software is the industry standard and among the best software available today for secure commerce transactions. It encrypts all of your personal information including credit card number, name and address so that it cannot be read as the information travels over the Internet."

Compl. ¶¶  3, 47.  Although promises of future performance cannot constitute false representations of *existing* fact, "if a promise is made for the purpose of deceiving and with no intention to perform, it constitutes such fraud as will support an action for deceit."  *Markov v. ABC Transfer & Storage Co.*, 76 Wn.2d 388, 396 (1969).  Similarly,

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 10

**DOZIER INTERNET LAW, P.C.**

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

if the promise is made without care or concern whether it will be kept, and the promisor knows or under the circumstances should know that the promisee will be induced to act or refrain from acting to his detriment, the promise will likewise support an action by the promisee.

*Id.* Plaintiff has alleged that Defendants made the above statements with no intention to honor them or made them without care or concern as to whether Defendants would honor the statements. Compl. ¶ 50; *see also id.* at ¶¶28-29. If Defendants did make these representations with intent not to honor them, they constitute false representations that will support a claim of fraud. *See Markov*, 76 Wn.2d at 396. Plaintiff alleged that Defendants knew the misrepresentations were false. *See* Compl. ¶¶ 28-29, 50. Indeed, Plaintiff alleged it was Defendants' standard business practice to ignore the representations made in the Agreement and on their website. *See id.* at ¶ 28. Plaintiff further alleged that these false representations were material to her decision to subscribe to IMDbPro. *Id.* at ¶ 48.

Plaintiff alleged that Defendants intended that Plaintiff would rely and act upon their misrepresentations. *Id.* at ¶ 51 ("Defendants made these representations with the intent to induce Plaintiff to subscribe to IMDbPro and to share her personal information."); *see also id.* at ¶ 3 ("Defendants go out of their way to make consumers feel safe about providing . . . highly confidential information" through the above misrepresentations. They constitute Defendants' "attempt to assuage privacy concerns."). She alleged that she was ignorant of the falsity of Defendants' misrepresentations. *Id.* at ¶ 52; *see also id.* at ¶¶ 4, 13, 28. Plaintiff alleged she relied on the truth of Defendants' misrepresentations about the safety, security and purpose for gathering her credit card information. *Id.* at ¶ 53 (alleging that "Plaintiff reasonably relied on Defendants' representations concerning the safe and proper handling of her personal information when she subscribed to IMDbPro" and she therefore shared her personal information). Plaintiff only shared the information because she believed and expected it would be used solely to process payment. *See id.* She also alleged that she had right to rely on the misrepresentations. *See id.* Finally, Plaintiff alleged that she suffered damages—she has seen a substantial decrease in annual credits and earnings and an overall diminution of the value of her acting services. *Id.* at ¶ 54; *see also id.* at ¶¶ 30-31, 33. Thus, Plaintiff has alleged all the required elements of a claim for fraud.

1   Plaintiff has also alleged the elements with the required particularity under Rule 9(b).

2   Plaintiff has informed Defendants of "who did what" and "describe[d] the fraudulent conduct

3   and mechanisms."   *See Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 165

4   (1987).  Moreover, Plaintiff provided Defendants with the time, place and content of the alleged

5   misrepresentations. *See Misc. Serv. Workers v. Philco-Ford Corp., WDL Div.,* 661 F.2d 776,

6   782 (9th Cir. 1981).  Plaintiff's Complaint alleges that the Defendants misrepresented the safety

7   and security and the purposes for which they gathered her credit card and personal information

8   through their website and the Agreement.  She pointed to particular statements located in the

9   Subscriber Agreement and on the IMDbPro website that lead her to believe the information was

10  safe and would be used for a particular purpose and which then induced her to share this

11  information.   Plaintiff noted that she subscribed to IMDbPro in 2008—it was at the time of

12  subscription that Plaintiff claims the fraud occurred.  Compl. ¶ 20.  Plaintiff has therefore

13  provided Defendants with "sufficient notice to enable them to prepare a defense" as required.

14  *See Haberman*, 109 Wn.2d at 165.  Plaintiff has gone beyond simply reciting the elements of a

15  claim for fraud.  She has provided sufficient factual allegations that, if true, would plausibly

16  entitle her to relief under this tort theory.  Plaintiff has met the standard established by *Twombly*

17  and Defendants' Motion to Dismiss should be denied.

18  **C.  Plaintiff States a Valid Cause of Action for Violation of Washington's Privacy Act**

19      Washington's Privacy Act ("WPA"), RCW 9.73 *et seq.*, makes it unlawful to intercept or

20  record a

21      [p]rivate communication transmitted by telephone, telegraph, radio, or other
        device between two or more individuals between points within or without the
22      state by any device electronic or otherwise designed to record and/or transmit said
        communication regardless how such device is power or actuated, without first
23      obtaining the consent of all the participants in the communication.

24  RCW 9.73.030.  There are essentially four elements to a claim alleging violation of the WPA:

25  "There must have been (1) a private communication transmitted by a device, which was (2)

26  intercepted by use of (3) a device designed to record and/or transmit, (4) without the consent of

27  all parties to the private communication."  *State v. Christensen*, 153 Wn.2d 186, 192 (2004).

28  Plaintiff has adequately pled these elements.

---

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 12

**DOZIER INTERNET LAW, P.C.**

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

1    Plaintiff alleged that "[t]he communication transmitting personal and credit card

2  information by Plaintiff between her computer and Defendants over the Internet is a 'private

3  communication transmitted by a device,'" under the WPA.  Compl. ¶ 59; *see also id.* at ¶¶ 4, 6,

4  28.  Plaintiff subscribed to IMDbPro and communicated her credit card and personal information

5  via Defendants' IMDbPro.com website.  *See id.* at ¶¶ 2, 20, 28.  Plaintiff alleged that her

6  personal and credit card information was intercepted.  *See id.* at ¶¶ 6, 60.  The information was

7  transmitted and intercepted over the Internet.  *See id.* at ¶¶ 6, 20, 60.  Finally, Plaintiff alleged

8  Defendants' conduct was without her consent.  *Id.* at ¶¶ 6, 60; *see also id.* at ¶¶ 3-4.

9    Defendants argue that Plaintiff cannot state a claim under the WPA as a matter of law

10  because the communication was not private and because, even if it was, Plaintiff consented to a

11  recording.  First Defendants argue that the communication was not private—Plaintiff had no

12  expectation of privacy in the transmittal of her personal and credit card information by her

13  computer and Defendants over the Internet.  Plaintiff was, they say, "aware that such

14  communications were not secure from interception by Defendants—in fact, the communication

15  that Plaintiff now claims she intended to keep private from Defendants, *she sent directly to*

16  *Defendants*."  Motion to Dismiss 16.  Whether a conversation may be considered private is

17  generally a question of fact, but may be decided as a question of law when the facts are not

18  meaningfully in dispute.  *See State v. Modica*, 164 Wn.2d 83, 87 (2006).  The WPA does not

19  define "private," but the Supreme Court of Washington has found that it means "belonging to

20  one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a

21  confidential relationship to something . . . a secret message: a private communication . . .

22  secretly: not open to the public."  *Id.* at 87-88 (internal quotation omitted).  The Court has not

23  found, however, that a conversation is not a private one "simply because the participants know it

24  will or might be recorded or intercepted."  *Id.*  Thus, simply because the communication was

25  directed to Defendants and therefore not necessarily "secure from interception by Defendants"

26  does not mean the conversation loses the capability of being private.  Defendants cite no law that

27  stands for the proposition that a communication is not private for purposes of the WPA as

28  between the parties involved in the communication.  This logic would contradict the language of

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 13

**Dozier Internet Law, P.C.**

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

1   the statute itself which requires consent of "*all* participants" before the communication may be

2   lawfully intercepted or recorded.   *See* RCW 9.73.030 (emphasis added).

3         In determining whether a communication is private, courts consider the subject matter

4   and the role of the interloper.  *See id.*  "[A] communication is private (1) when parties manifest a

5   subjective intention that it be private and (2) where that expectation is reasonable." *Modica*, 164

6   Wn.2d at 88.  In this case, the substance of the communication was sensitive—Plaintiff's credit

7   card information.  Moreover, the IMDb.com website merely provided a form by which Plaintiff

8   could provide her credit card information to Amazon.com.  *See* Compl. ¶ 3 (The IMDbPro

9   subscription page indicated to Plaintiff that payment processing would be completed by

10  Amazon.com and that her information would be encrypted so that it could not be read as it

11  traveled on the Internet.).  The communication was a private one intended to be directed to

12  Amazon.com for payment for Plaintiff's subscription to IMDbPro.  Instead it was intercepted

13  and recorded by *IMDb.com*.  Plaintiff manifested a subjective intention that the communication

14  be private and such expectation of privacy was reasonable in light of assurances and

15  representations by Defendants that payment would be processed by Amazon.com—and not

16  IMDb.com.  *See* Compl. ¶¶ 2-3, 20, 47, 53.  Accepting Plaintiff's factual allegations as true at

17  this stage, the Court should find that Plaintiff properly pled a private communication as required

18  by the WPA.

19        Defendants also argue that Plaintiff cannot state a cause of action for violation of the

20  WPA because she consented to the interception and recording of her information.  The WPA

21  provides:

22        Where consent by all parties is needed pursuant to this chapter, consent shall be
23        considered obtained whenever one party has announced to all other parties
        engaged in the communication or conversation, in any reasonably effective
24        manner, that such communication or conversation is about to be recorded or
        transmitted.
25
26  RCW 9.73.030.  Defendants claim that they did so announce.  However, the Complaint avers that

    Defendants did not.
27
28        Defendants claim that the "Subscriber Agreement and Privacy Policy specifically state

---

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 14

**DOZIER INTERNET LAW, P.C.**

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

that IMDb.com and Amazon.com, Inc. will collect, retain, and use subscriber information." Motion to Dismiss 16.[4]  For Defendants' "announcement" to establish consent, it must have been made in a "reasonably effective manner."  Plaintiff alleged that Defendants informed her that the communication would be used for one purpose (processing of payment, which was to be completed by Amazon.com) but instead intercepted and recorded it for another.  *See* Compl. ¶¶ 6, 28, 60.  If the language referred to be Defendants in the Subscriber Agreement and Privacy Notice is asserted to serve as an announcement as envisioned by the WPA that Defendants were intercepting and recording her credit card information, it certainly cannot be considered, as a matter of law, a "reasonably effective" one that would alert Plaintiff to such interception and recording.  When juxtaposed with the other information provided by Defendants' website suggesting the credit card information is collected for purposes of payment processing by Amazon.com, *see* Compl. ¶¶ 2-3, the Agreement does not alert the user that credit card information is among that collected by Defendants pursuant this Agreement.  Moreover, the Agreement itself implies that information gathered in payment processing is not the information subject to the Agreement.  *See* pp. 8-9 *supra*; *see also* Locke Decl. Exhibits B-C (Credit card information is not among the examples of information Defendants specifically note that they collect.).  Additionally, Defendants have cited no law calling this Court to find that as a matter of law Plaintiff can share information and consent to its recording and interception for one purpose (*e.g.*, payment processing) and not for another (*e.g.*, conducting research to gather additional personal information about Plaintiff).  Plaintiff did not consent to Defendant's interception and recording of her credit card information.  Defendants' Motion to Dismiss should be denied.

### D.  Plaintiff States a Valid Cause of Action for Violation of Washington's Consumer Protection Act

To state a claim under the Washington Consumer Protection Act ("CPA"), RCW 19.86.020, a plaintiff must plead "(1) an unfair or deceptive act or practice (2) in trade or

---

[4] The Agreement does not specifically state that Defendants will collect, retain and use *subscriber* information. To the extent Defendants are referencing *registration* information, registration and subscription are different processes. Plaintiff *registered* for IMDb's services in 2003 when she first entered her account profile information. *See* Compl. ¶ 19.  She *subscribed* to IMDbPro—that is, upgraded to the pay-service—in 2008.  *See id.* at ¶ 20.

<table>
<tr><td>PLAINTIFF'S BRIEF IN OPPOSITION TO 12(B)(6) MOTION TO DISMISS- 15</td><td>**DOZIER INTERNET LAW, P.C.**</td><td>11520 Nuckols Road, Suite 101 Glen Allen, Virginia 23059 (804) 346-9770</td></tr>
</table>

1  commerce (3) that affects the public interest, (4) injury to the plaintiff, and (5) a causal link

2  between the unfair or deceptive act and the injury." *Walker v. Wenatchee Valley Truck & Auto*

3  *Outlet, Inc.*, 155 Wn. App. 199, 207 (2010) (citing *Hangman Ridge Training Stables, Inc. v.*

4  *Safeco Title Ins. Co.*, 105 Wn.2d 788, 780, 784-85 (1986)).  To establish that the alleged act was

5  unfair or deceptive, "[a] plaintiff need not show that the act in question was *intended* to deceive,

6  but that the alleged act had the *capacity* to deceive a substantial portion of the public."

7  *Hangman*, 155 Wn.2d at 785.  Plaintiff has properly stated a claim under the CPA.

8      Plaintiff alleged that Defendants' conduct amounts to an unfair or deceptive act or

9  practice.  Compl. ¶ 67.  In support of that allegation, the Complaint alleges that Defendants

10  misrepresent the safety, security and purpose for which they gather and use personal and credit

11  card information of IMDbPro subscribers in an attempt to pacify consumers and to convince

12  them to share personal information.  *Id.* at ¶ 65; *see also id.* at ¶¶ 3-4, 28, 46, 50.  To plead that

13  Defendants' conduct was unfair or deceptive, Plaintiff may allege that the conduct had the

14  "capacity to deceive a substantial portion of the public."  *Hangman*, 155 Wn.2d at 785 (emphasis

15  removed).  Plaintiff has so alleged.  The Complaint states millions of consumers are listed in the

16  Internet Movie Database.  Compl. ¶ 5.  The many consumers who wish to subscribe to IMDbPro

17  must provide credit card information to Defendants.  *Id.* at ¶ 2.  However,  "[t]he IMDbPro

18  subscription process plainly has great capability to invade the privacy of the subscribers and

19  misappropriate their personal and credit card information."  *Id.* at  ¶ 3.  Therefore, "Defendants

20  go out of their way to make consumers feel safe," however, Defendants' merely attempt to

21  assuage consumers' concerns through "vague, ambiguous, inaccurate and uninformative"

22  statements about Defendants' actual data collection  and handling procedures.  *Id.*  The

23  Complaint goes on to allege that, unknown to subscribers, Defendants use consumers'

24  information beyond the purposes consented to by them.  *Id.* at ¶ 4.  Defendants' practices,

25  Plaintiff alleged, have the capacity to deceive a substantial portion of the public—many

26  consumers subscribe to IMDbPro and share their credit card information with Defendants all the

27  while unaware that Defendants use the information for purposes beyond those consented to by

28  the consumers who subscribe to Defendants' service.

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 16

DOZIER INTERNET LAW, P.C.

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

1   Moreover, Plaintiff has pled the Defendants' unfair or deceptive practices occurred in

2   trade or commerce.  The conduct complained of occurred during the subscription process when

3   Plaintiff paid for the IMDbPro service.  *See id.* at ¶¶ 2-3, 20.  Plaintiff alleged that Defendants'

4   conduct affects the public interest.  *Id.* at ¶¶ 67-68; *see also id.* at ¶¶ 3-5.  Plaintiff alleged she

5   was injured in the form of decreased acting credits and earnings and an overall diminution in the

6   value of her acting services.  *Id.* at ¶¶ 33, 43, 54, 62, 69; *see also id.* at ¶ 30.  This, she claimed,

7   was a direct result of and causally connected to Defendants' conduct.  *See id.* at 69.  Defendants

8   used Plaintiff's personal and credit card information for purposes beyond those that were

9   represented to her.  *See id.* at ¶ 6.  In so doing, they obtained and published further information

10  about her to her stage-name profile on the IMDb.com website.  *See id.* at ¶¶ 6, 21, 25, 27.

11  Because Defendants have revealed this information about Plaintiff on their website, Plaintiff's

12  career has been substantially damaged.  *See id.* at 22, 30.  Plaintiff has properly pled the elements

13  of a cause of action under the CPA and has stated sufficient facts to support the claim under the

14  *Twombly* standard.

15      In conclusion, Plaintiff has adequately pled each of her causes of action.  She has stated

16  sufficient factual allegations to support each element of her claims and has therefore provided

17  Defendants with notice of the nature of her claims against them.  Plaintiff met her burden under

18  Fed. R. Civ. P. 8 and *Twombly* and Defendants' Motion to Dismiss should be denied.   Based on

19  her current claims, Plaintiff agrees that punitive damages beyond those trebled damages to which

20  she is entitled pursuant to the CPA (to the extent such damages are considered punitive) are not

21  statutorily authorized.  Plaintiff does not waive her right to seek punitive damages in the future

22  should she amend her Complaint to include a cause of action for which punitive damages would

23  be appropriate.

24      ### E.  Plaintiff is Entitled to Costs and Fees

25  The Western District of Washington General Rule 3(d) provides:

26      An attorney or party who without just cause fails to comply with any of the
27      Federal Rules of Civil or Criminal Procedure, or these rules, or orders of the
        court, or who presents to the court unnecessary motions or unwarranted
28      opposition to motions, or who fails to prepare for presentation to the court, or who

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 17

**DOZIER INTERNET LAW, P.C.**

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

otherwise so multiplies or obstructs the proceedings in a case as to increase the cost thereof unreasonably and vexatiously, may, in addition to, or in lieu of the sanctions and penalties provided elsewhere in these rules, be required by the court to satisfy personally such excess costs, and may be subject to such other sanctions as the court may deem appropriate.

This Court has the discretion to award costs and fees incurred in responding to unwarranted motions and motions that multiply or obstruct proceedings in a case. *See id.*; *Curt-Allen v. Lovick*, No. C10-0609JLR, 2010 U.S. Dist. LEXIS 91698, *2-3 (W.D. Wash. Aug. 9, 2010) (Fed. R. Civ. P. 11 also permits the court to sanction a party when "a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose.").  Plaintiff has incurred substantial costs and fees in responding to Defendants' Motion to Dismiss.  She contends Defendants' Motion was unwarranted and merely obstructed the proceedings and that she is therefore entitled to reimbursement for those costs and fees from Defendants.

## IV.  CONCLUSION

Plaintiff has adequately stated four causes of action against Defendants in her Complaint.  If the facts as pled are true, Plaintiff is entitled to relief.  Further, she has stated her claims with enough supporting factual allegations to satisfy the pleading standard established by *Twombly* and its progeny.  Thus Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss and award her costs and fees incurred in responding to this Motion.  In the alternative, should the Court grant Defendants' Motion, Plaintiff contends that she has stated sufficient allegations to warrant leave to file an Amended Complaint to cure any deficiencies found by the Court.

Dated this 28th day of November, 2011.          Respectfully submitted,

**DOZIER INTERNET LAW, P.C.**

By:          /s/ John W. Dozier, Jr.
John W. Dozier, Jr., Esq., VSB No. 20559
*Admitted pro hac vice*
11520 Nuckols Rd., Suite 101
Glen Allen, Virginia  23509
Tel:  (804) 346-9770
Fax:  (804) 346-0800
Email:  jwd@cybertriallawyer.com

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 18

DOZIER INTERNET LAW, P.C.

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770

1

**NEWMAN DU WORS LLP**

2

By:           /s/ Randall Moeller
Derek A. Newman, Esq., WSBA 26967
Randall Moeller, Esq., WSBA No. 21094
1201 Third Avenue, Suite 1600
Seattle, Washington 98101

3

4

5

6

Attorneys for Plaintiff Jane Doe, an individual

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

3    I certify that on November 28, 2011, I electronically filed the foregoing BRIEF IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)
with the Clerk of the Court using the CM/ECF system, thereby sending notification of such filing

4    to the following attorneys of record:

5

6    Ashley A. Locke, Esq.
Breena Michelle Roos, Esq.
Elizabeth L. McDougall-Tural, Esq.

7    Perkins Coie LLP
1201 Third Avenue, Suite 4800

8    Seattle, Washington 98101

9

10    I certify under penalty of perjury that the foregoing is true and correct.

Dated this 28th Day of November, 2011.

11

12                         **DOZIER INTERNET LAW, P.C.**

13

14                   By:        /s/ John W. Dozier, Jr.
                          John W. Dozier, Jr., Esq., VSB No. 20559

15                        *Admitted pro hac vice*
                          11520 Nuckols Rd., Suite 101

16                        Glen Allen, Virginia  23509
                          Tel:  (804) 346-9770

17                        Fax:  (804) 346-0800
                          Email:  jwd@cybertriallawyer.com

18

19                        **NEWMAN DU WORS LLP**

20                        Derek A. Newman, Esq., WSBA 26967

21                        Randall Moeller, Esq., WSBA No. 21094
                          1201 Third Avenue, Suite 1600

22                        Seattle, Washington 98101

23

24                        Attorneys for Plaintiff Jane Doe, an individual

25

26

27

28

PLAINTIFF'S BRIEF IN OPPOSITION TO
12(B)(6) MOTION TO DISMISS- 20

**DOZIER INTERNET LAW, P.C.**

11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059
(804) 346-9770