UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE,<br><br>             Plaintiff,<br><br>     v.<br><br>AMAZON.COM, INC., a Delaware corporation, and IMDB.COM, INC., a Delaware corporation,<br><br>             Defendants. | CASE NO. C11-1709MJP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 10(A) AND GRANTING LEAVE TO AMEND |

This matter comes before the Court on Defendants' motion to dismiss pursuant to Rule 10(a) of the Federal Rules of Civil Procedure. (Dkt. No. 12.) Having considered the motion, Plaintiff's response (Dkt. No. 25), Defendants' reply (Dkt. No. 29), and the remaining record, the Court GRANTS Defendants' motion to dismiss pursuant to Rule 10(a) and DISMISSES Plaintiff's complaint. Plaintiff is given leave to amend her complaint within 14 days of the entry of this order by adding her real name.

It is further ORDERED that Defendants' pending motion to dismiss pursuant to Rule 12(b)(6) (Dkt. No. 15) is stayed pending the filing of Plaintiff's amended complaint.

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS PURSUANT TO RULE 10(A) AND
GRANTING LEAVE TO AMEND- 1

**Background**

Plaintiff Jane Doe is a 40-year-old Asian-American actress living in Texas. (Dkt. No. 1 at 4.) Seeking to launch her acting career, Plaintiff in 2003 established an online profile on the Internet Movie Database website (IMDb.com) so she could connect with casting directors and obtain acting roles. (Id. at 5.) IMDb.com is a fully owned subsidiary of Defendant Amazon.com. (Dkt. No. 12 at 2.)

Plaintiff used the IMDb.com website to successfully obtain a number of acting roles, and in 2008 Plaintiff signed up for an expanded service, IMDbPro, which allows users to create an online resume and expanded profile. (Dkt. No. 1 at 6.) In order to sign up, the IMDbPro service requires users to provide credit card information and other personal information, including the subscriber's legal name, address, and ZIP code. (Id. at 5.)

Plaintiff alleges that Defendants took information obtained from her during the IMDbPro subscription process and added it to her online profile without her authorization. (Id. at 7.) Plaintiff's true age was not among the personal information she provided during the subscription process, but she alleges that IMDb.com used the information she did provide "to scour public records databases and other sources for purposes of discovering Plaintiff's date of birth." (Id. at 9.) Plaintiff alleges that IMDb.com then posted Plaintiff's true age on her online profile, and refused to take it down when she asked them to. (Id. at 6.)

Plaintiff alleges that revealing her true age on the IMDb website has made it nearly impossible for her to get acting work. (Id. at 6.) This is because, "[i]n the entertainment industry, youth is king." (Id.) Plaintiff alleges that Defendants' actions have caused a "double whammy." (Id.) Because she is seen as "over the hill," Plaintiff cannot get roles playing younger women, and because she looks so much younger than she actually is, Plaintiff "cannot physically portray

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS PURSUANT TO RULE 10(A) AND
GRANTING LEAVE TO AMEND- 2

1    the role of a forty-year-old woman." (Id.) This, she argues, has caused a substantial decrease in

2    her earnings. (Id. at 7.)

3        Plaintiff brings a cause of action for breach of contract, claiming that Defendants violated

4    IMDbPro's subscriber agreement and the accompanying privacy policy. (Id. at 7-8.) Plaintiff

5    also brings suit for fraud, claiming that Defendants made material misrepresentations on their

6    website concerning their intent to protect subscribers' personal information. (Id. at 10.) In

7    addition to her common law claims, Plaintiff alleges that Defendants' actions violated the

8    Washington Privacy Act, RCW 9.73.030, and the Washington Consumer Protection Act, RCW

9    19.86. (Id. at 10-12.)

10        Plaintiff alleges that it is Defendants' "standard business practice to routinely intercept,

11    store, record, and further use" customers' private information obtained during the subscription

12    process. (Id. at 6.) Plaintiff asks the Court to issue an injunction removing Plaintiff's personal

13    information from the IMDb.com website and to enjoin Defendants from engaging in similar

14    practices with her or with other customers. (Id. at 12.) Plaintiff seeks $75,000 in compensatory

15    damages and $1 million in punitive damages. (Id.) She also seeks an award of treble damages

16    and an award of costs and fees. (Id.)

17        Plaintiff brings this action as "Jane Doe" because, she argues, "[c]oming forward in her

18    real name would impact the purpose of her lawsuit which is to seek IMDb's compliance with its

19    obligation to maintain the privacy of her personal information." (Dkt. No. 25 at 3.)  Defendants

20    counter that allowing Plaintiff to proceed anonymously runs afoul of the public's right of access

21    to judicial proceedings, and that the right to proceed anonymously is reserved for special

22    situations where plaintiffs risk serious harm by suing under their real names. (Dkt. No. 12 at 6.)

23

24

1  In addition to asking the Court to dismiss Plaintiff's case unless she identifies herself,
2  Defendants ask the Court to sanction Plaintiff for unreasonably increasing the expense of
3  litigation. (Dkt. No. 12 at 9.) Plaintiff also asks the Court to sanction Defendants for filing
4  multiple motions to dismiss. (Dkt. No. 25 at 11.)

5  **Discussion**

6  A.  Procedure for Filing Anonymously

7  As an initial matter, Defendants argue that Plaintiff erred by filing her suit anonymously
8  without prior leave of the Court. (Dkt. No. 12 at 6.) Although some circuits require plaintiffs to
9  obtain leave of the court before filing an anonymous pleading, the Ninth Circuit does not. See
10 Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000). In the Ninth
11 Circuit, it is permissible for plaintiffs to file suit under pseudonyms and then file a cross-motion
12 for leave to proceed under fictitious names in the response to a motion to dismiss. EEOC v.
13 ABM Indus., 249 F.R.D. 588, 592 (E.D. Cal. 2008); Doe v. Penzato, 2011 WL 1833007 (N.D.
14 Cal.).

15 In her opposition to Defendants' motion to dismiss, Plaintiff included a cross-motion to
16 proceed anonymously. (Dkt. No. 25.) Therefore, Plaintiff has not erred in the manner in which
17 she sought to proceed anonymously, and this matter is properly before the Court. (See Dkt. No.
18 29 at 3.)

19 B.  Ninth Circuit Standard for Proceeding Anonymously

20 Federal Rule 10(a) requires that the title of every complaint "include the names of all the
21 parties." Fed. R. Civ. P. 10(a). This is an important rule designed to uphold the public's common
22 law right of access to judicial proceedings. Advanced Textile Corp., 214 F.3d at 1069. However,
23 the Ninth Circuit has carved out an exception allowing parties to use pseudonyms in the "unusual
24

case" when nondisclosure of the party is necessary to "protect a person from harassment, injury, ridicule or personal embarrassment." United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981).

The major Ninth Circuit case on proceeding anonymously because of fear of economic retaliation is Advanced Textile Corp., 214 F.3d 1058, which instructs district courts to consider five factors when determining whether to allow a party to proceed anonymously. These five factors are: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to retaliation, (4) the prejudice to the opposing party, and (5) the public interest. 214 F.3d at 1068; see also Doe v. Kamehameha Schs., 596 F.3d 1036, 1042-43 (9th Cir. 2010) (stating that the first two factors, the severity of the threatened harm and the reasonableness of the plaintiff's fears, are the most important factors). Here, four of the five Advanced Textile Corp. factors weigh against permitting Plaintiff to proceed anonymously.

First, while the harms that Plaintiff fears—embarrassment, ridicule, and retaliation—may be serious, they do not rise to the level of severity required by the Ninth Circuit to permit a party bring a case anonymously in federal court. (Dkt. No. 25 at 5-6.) While physical harm presents the paradigmatic case for allowing anonymity, extreme non-physical retaliation may also be sufficient. 214 F.3d at 1069. In Advanced Textile Corp., the Ninth Circuit considered a case brought under the Fair Labor Standards Act by Chinese and Bangladeshi garment workers living and working on the island of Saipan in the U.S. Commonwealth of the Northern Mariana Islands. 214 F.3d at 1063. The garment workers in Advanced Textile Corp. feared "that if their true identity is revealed, they will face actual physical violence, the threat of physical violence, immediate deportation to China or their country of origin, likely arrest upon arrival in China . . .

1  and economic retaliation . . . ." 214 F.3d at 1063. In that case, economic retaliation included

2  actual threats made by factory managers of "termination, blacklisting, deportation, and closing

3  the factory." 214 F.3d at 1065.

4        The Plaintiff in the present case borrows this language and asserts that disclosing her

5  identity will subject her to "industry blacklisting and loss of livelihood." (Dkt. No. 25 at 7.)

6  However, while revealing Plaintiff's identity may negatively affect her prospects of being hired

7  as an actress, the harm she faces is of an order of magnitude less than the potential harm faced by

8  the foreign garment workers in Advanced Textile Corp. In this case, Plaintiff is not working on a

9  small island where her immigration status is directly tied to her employment. 214 F.3d at 1062.

10  She is not facing eviction from company-owned housing. 214 F.3d at 1062. She faces no risk of

11  deportation or retaliation directed at her family. 214 F.3d at 1062-63. Instead, Plaintiff argues she

12  faces "new-age harms" such as "cyber bullying." (Dkt. No. 25 at 7.) While the economic harms

13  she alleges may be real, Plaintiff present no evidence that the retaliation she may encounter is at

14  all similar to the truly grave harms plaintiffs feared in Advanced Textile Corp. (Dkt. No. 26 at 2.)

15        Second, even if the harm Plaintiff fears is classified as severe, Plaintiff's fears are not

16  objectively reasonable. To judge the reasonableness of a plaintiff's fears, courts are instructed to

17  "consider the surrounding context and other listeners' reactions to the threats." Kamehameha,

18  596 F.3d at 1044. In Kamehameha, the Ninth Circuit considered a suit brought by four non-

19  Hawaiian schoolchildren challenging a school's admissions policy restricting enrollment to

20  Native Hawaiians. The Ninth Circuit upheld the district court's decision not to allow the children

21  to proceed anonymously, even though death threats had been made against the children in a

22  variety of online arenas. Id. at 1045.  The Ninth Circuit explained that "many times people say

23  things anonymously on the internet that they would never say in another context and have no

24

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS PURSUANT TO RULE 10(A) AND
GRANTING LEAVE TO AMEND- 6

1  intention of carrying out." Id. (internal citations omitted). The Ninth Circuit found that, in that
2  case, "plaintiffs had culled only a few comments out of hundreds of anonymous comments
3  regarding this case." Id.

4      The same reasoning applies here. Plaintiff asserts that she is "the subject of lewd and
5  harmful messages regarding this lawsuit" and provides documentation of a number of online
6  posts containing distasteful remarks about her. (Dkt. No. 25 at 7; Dkt. No. 27-4.) However, a
7  review of the record shows that threatening comments constitute only a few posts culled from
8  many other non-threatening posts, and that, in the broader context, readers of these comments
9  would likely not perceive them to be actual threats against Plaintiff. Courts are instructed to
10 examine a party's fears through a critical lens. For example, in Kamehameha, the Ninth Circuit
11 held that the district court did not abuse its discretion in finding plaintiffs' fears unreasonable,
12 even though the U.S. Attorney in Hawaii took them so seriously that he issued a strongly worked
13 warning reminding the public that threats based on race are a federal felony. 596 F.3d at 1045. In
14 this case, the threats against Plaintiff are far less serious than those in Kamehameha. Because an
15 objective observer would not find the threats made against Plaintiff to be serious in the
16 surrounding context, Plaintiff's fears are not objectively reasonable.

17     Plaintiff also argues that she fears direct retaliation from Defendants, including further
18 loss of control of her IMDb.com profile. (Dkt. No. 25 at 8.) However, Plaintiff alleges this harm
19 is occurring even without public disclosure of her identity. This harm, even if real, is not
20 dependent on whether Plaintiff's identity is revealed to the public, and does not affect the Court's
21 analysis on the issue of whether Plaintiff should be able to proceed anonymously.

22     Third, Plaintiff is not uniquely vulnerable to retaliation, so the Court need not take special
23 steps to protect her. In Advanced Textile Corp., the Ninth Circuit held that the garment worker
24

plaintiffs' vulnerability to retaliation weighed in favor of the court permitting them to proceed anonymously in their suit against their employers. 214 F.3d at 1072. The Ninth Circuit noted that the garment workers were "nonresident foreign workers, present in Saipan for the sole purpose of working in defendants' garment factories." Id. The workers resided in company "barracks," and did not have the freedom to quit working for one employer and seek employment at another factory on Saipan. Id. In the instant case, Plaintiff argues that she is vulnerable to "social stigmatization" and "loss of privacy," and that the "high profile nature of this case significantly increases Plaintiff's vulnerability to such retaliation." (Dkt. No. 25 at 7.) Plaintiff also argues that she is uniquely vulnerable to retaliation because Defendants are "[a]rmed with Ms. Doe's highly sensitive and personal credit card data." (Dkt. No. 25 at 8.)

However, Plaintiff does not allege that this "personal information" extends beyond her full name, address, age, and ZIP code. (Dkt. No. 1 at 5.) Plaintiff also does not allege that Defendants intend to misuse her credit card information in ways that extend beyond putting her correct age on her online profile. (Id.) Besides stating that Plaintiff is vulnerable because she is the person who brought this suit, Plaintiff does not provide any evidence of factors that make her especially vulnerable to retaliation.

The fourth factor—potential prejudice to Defendants—also weighs against permitting Plaintiff to proceed anonymously, but not strongly. Defendants argue that permitting Plaintiff to proceed anonymously would prejudice them, because they "cannot be certain" they have correctly identified Plaintiff, and "[a]bsent such certainty, IMDb.com's factual investigation, collection of evidence and analysis of the allegations of the Complaint may be irrelevant and useless (as well as completely wasteful)." (Dkt. No. 12 at 5.) While Defendants may be prejudiced by Plaintiff's anonymity, they fail to explain why the Court could not mitigate this

potential prejudice. In Advanced Textile Corp., the Ninth Circuit expressly stated that "the district court should use its power to manage pretrial proceedings and to issue protective orders limiting disclosure of the party's name to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case." 214 F.3d at 1069 (internal citations omitted). Defendants here do not argue that case management would not be similarly effective in this context. Therefore, while there is some risk of prejudice if Plaintiff is permitted to proceed anonymously, this factor does not strongly favor requiring Plaintiff to name herself.

The fifth factor, the public interest, also does not weigh strongly on one side, because two facets of the public interest pull in opposite directions. The Ninth Circuit has recognized that allowing a party to file a case in federal court under a fictitious name obstructs "the common law rights of access to the courts and judicial records." Kamehameha, 596 F.3d at 1042. However, the Ninth Circuit has also recognized that the public has an interest in seeing cases decided on their merits, and the Court recognizes that requiring Plaintiff to disclose her identity in this case may prevent that. Advanced Textile Corp., 214 F.3d at 1073. Permitting Plaintiff to proceed anonymously in this case would negatively impact the public's interest in open courts, but may advance the public's interest in reaching an outcome in this particular suit. Because it pulls in both directions, the public interest is not a critical factor in this analysis.

In sum, Plaintiff argues that proceeding under her true name would obviate the purpose of her lawsuit, which is to seek IMDb.com's compliance with its privacy policies without exposing her to unwanted publicity. (Dkt. No. 25 at 5.) Given the extensive media coverage this matter has received, Plaintiff may be correct. (Dkt. No. 13-1 (documenting extensive media coverage to date).) However, the issue before the Court is not whether Plaintiff may use the

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS PURSUANT TO RULE 10(A) AND
GRANTING LEAVE TO AMEND- 9

1   judiciary to accomplish her precise goal of redressing her harm while protecting her identity.

2   Instead, the issue is whether the Federal Rules of Civil Procedure permit a Plaintiff to proceed

3   anonymously in a case of this type. In the present case, while Plaintiff may face public ridicule

4   and embarrassment if she elects to go forward under her real name, the injury she fears is not

5   severe enough to justify permitting her to proceed anonymously. <u>Advanced Textile Corp.</u>, 214

6   F.3d at 1070.

7         C.   <u>Sanctions</u>

8         Both parties ask the Court to impose sanctions on the opposing party for violating the

9   Local Rules of this District. Defendants cite Local Rule GR 3(d), which permits the Court to

10  impose costs and fees on a party who "so multiplies or obstructs the proceedings in a case as to

11  increase the cost thereof unreasonably and vexatiously." (Dkt. No. 12 at 10 (<u>citing</u> Local Rule

12  W.D. Wash. GR 3(d)).) In response, Plaintiff alleges that Defendants ignored the Court's prior

13  instruction that they "serve on the plaintiff an answer to the attached complaint or a motion under

14  Rule 12," by filing a motion under Rule 10(a) a few hours before filing their motion under Rule

15  12(b)(6). (Dkt. No. 2 at 1; Dkt. No. 25 at 10.) Plaintiff also argues that filing two concurrent

16  motions violates the Court's local rules, which discourage the "filing of multiple dispositive

17  motions to avoid the page limits" of the Local Rules. (Dkt. No. 25 at 11 (<u>citing</u> Local Rule W.D.

18  Wash. CR 7(e)(3)).)

19        The decision whether to impose sanctions is soundly within the discretion of the Court.

20  Local Rule W.D. Wash. GR 3(d). Here, neither party presents compelling evidence showing they

21  are entitled to an imposition of sanctions on the opposing party. While Plaintiff's decision to file

22  her complaint anonymously is unusual, it is an exaggeration to say it is vexatious. And while

23  Defendants should have filed their motion under Rule 12(b)(6) before filing their motion under

24

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS PURSUANT TO RULE 10(A) AND
GRANTING LEAVE TO AMEND- 10

rule 10(a), the language in the Summons did not precisely address the issue of a separate motion, and it would be unreasonable for the Court to sanction Defendants when both motions were filed the same day, a few hours apart. There is also no evidence that Defendants filed two motions to defeat page limits in the local rules. Therefore, the Court declines to impose sanctions on either party.

## Conclusion

The Court GRANTS Defendants' motion and DISMISSES Plaintiff's complaint. Because neither party's conduct was unreasonable, the Court DENIES an award of fees or costs to either party. The Court gives Plaintiff 14 days from the entry of this order to amend her complaint by adding her real name.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 23rd day of December, 2011.

Marsha J. Pechman
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS PURSUANT TO RULE 10(A) AND
GRANTING LEAVE TO AMEND- 11