EXHIBIT DDD

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE


| | |
|---|---|
| Huong Hoang, | ) No. 2:11-CV-01709-MJP |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Amazon.com, Inc., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |


PURSUANT TO PROTECTIVE ORDER, PORTIONS OF THIS TRANSCRIPT

DESIGNATED ATTORNEYS EYES ONLY and CONFIDENTIAL

(SEE INDEX PAGE)


DEPOSITION OF:



JOE KOLKOWITZ

Tuesday, August 7, 2012

8:30 a.m.




Reported by:

MONICA T. VOGELBACHER

CSR No. 6406

1           Deposition of JOE KOLKOWITZ, taken at 1888

2   Century Park East, Suite 1700, Los Angeles, California,

3   beginning at 8:30 a.m. and ending at 10:04 a.m., on

4   Tuesday, August 7, 2012, before MONICA T. VOGELBACHER,

5   Certified Shorthand Reporter No. 6406.

6

7   APPEARANCES:

8

9   For Plaintiff:

10

11           DOZIER INTERNET LAW, P.C.

12           BY:  DOV SZEGO

13           Attorney at Law

14           11520 Nuckols Road, Suite 101

15           Glen Allen, Virginia  23059

16           (804) 346-9770

17           dov@cybertriallawyer.com

18

19

20

21

22

23

24

25

1    APPEARANCES: (Continued)

2

3    For Defendants:

4

5            PERKINS COIE LLP

6            BY:  BREENA M. ROOS

7            Attorney at Law

8            1201 Third Avenue, Suite 4800

9            Seattle, Washington  98101

10            (206) 359-8000

11            broos@perkinscoie.com

12

13    Also Present:

14

15            JUNIE HOANG

16

17

18

19

20

21

22

23

24

25

1                          INDEX

2

3              ATTORNEYS EYES ONLY TESTIMONY

4

5   Pages:

6   22, 30, 32, 35, 78

7

8

9                  CONFIDENTIAL TESTIMONY

10  Pages:

11  42, 46-48, 51-55, 58-59, 63, 68-69, 74-75

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                              INDEX

2

3    WITNESS:                                    EXAMINATION

4    JOE KOLKOWITZ

5

6                 BY MS. ROOS                          8

7                 BY MR. SZEGO                         70

8                 BY MS. ROOS                          84

9

10

11                    E X H I B I T S

12   DEFENDANT                                        PAGE

13   *Exhibit 1    Subpoena to Testify at a            9
                   Deposition, etc.
14
     *Exhibit 2    "Honda first call" 11/21/09        38
15                 e-mail

16   *Exhibit 3    5/5/09 e-mail to Mr. Kolkowitz     39

17   *Exhibit 4    7/31/12 e-mail from                59
                   Mr. Kolkowitz
18
     *Exhibit 5    1/3/11 e-mail from                 60
19                 Mr. Kolkowitz

20   *Exhibit 6    Plaintiff's Third Supplemental     64
                   Objections and Responses to
21                 Defendants' Interrogatories and
                   Requests for Production to
22                 Plaintiff

23

24   *             Confidential exhibits

25

Page 6

1   INDEX (Continued):

2

3                      INFORMATION REQUESTED

4                              (None)

5

6

7              QUESTION INSTRUCTED NOT TO ANSWER

8                              (None)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

1          Los Angeles, California; Tuesday, August 7, 2012

2                    8:30 a.m. - 10:04 a.m.

3

4          THE REPORTER:  My name is Monica Vogelbacher of

5     Merrill Corporation, at 20750 Ventura Boulevard, Suite

6     205, Woodland Hills, California.

7          Today's date is August 7, 2012, the time is 8:30

8     a.m., and the location is 1888 Century Park East, Suite

9     1700, Los Angeles, California.

10          Counsel, please voice identify yourselves and

11     state whom you represent.

12          MS. ROOS:  Breena Roos from Perkins Coie on

13     behalf of defendants Amazon.com, Inc. and IMDb.com, Inc.

14          MR. SZEGO:  Dov Szego from Dozier Internet Law

15     here on behalf the plaintiff, Huong Hoang.

16          THE REPORTER:  The witness is Joe Kolkowitz.

17          Raise your right hand.  I will place you under

18     oath.

19          (Witness sworn.)

20          THE WITNESS:  I don't believe in God, but I will

21     admit that I will tell the truth.

22     //

23     //

24     //

25     //

1                        JOE KOLKOWITZ,

2   having been first duly sworn, was examined and testified

3   as follows:

4

5                        EXAMINATION

6   BY MS. ROOS:

7        Q    Can you please state your name for the record.

8        A    Joe Kolkowitz.

9        Q    And what is your business address?

10       A    16130 Ventura Boulevard, Suite 235, Encino,

11   91436.

12       Q    Mr. Kolkowitz, have you been deposed before?

13       A    Yes.

14       Q    How long ago were you deposed?

15       A    Maybe 12, 15 years ago.

16       Q    So it's been a while.

17       A    Yeah.

18       Q    So I'll just give you a quick explanation of the

19   deposition process just to refresh your memory.

20            As you know, you are under oath to tell the

21   truth here today.  The deposition today is being recorded

22   by a stenographer, and because it's being recorded by a

23   stenographer, it's important to give audible answers

24   rather than nods or gestures.

25            Do you understand that?

1        A    1969.

2        Q    And what is your profession?

3        A    I am the owner and an agent of Players Talent

4   Agency.

5        Q    How long have you been the owner?

6        A    29 years.

7        Q    What did you do before opening Players Talent

8   Agency?

9        A    I was a tennis professional.

10       Q    Do you have other agents that work with you at

11  Players Talent Agency?

12       A    Not actually, no.  No.

13       Q    Any other employees?

14       A    No.

15       Q    So what do you do as an agent and owner of

16  Players Talent Agency?

17       A    What do I do?

18       Q    Uh-huh.

19       A    I try and create opportunities for people that I

20  represent so they can book either commercials, TV,

21  movies, infomercials, videos, things like that.

22       Q    Are the people you represent actors?

23       A    Actors, ex-athletes.  My main focus has been

24  athletes and ex-athletes, but in the last ten years I

25  started branching out and started representing some

1    actors and actresses and some comedians, and things like

2    that.  Sportscasters, stuff like that.

3              (Interruption in proceedings.)

4              THE WITNESS:  I'm sorry about that.  I'll figure

5    out how to turn that down.  Excuse me.

6              Keep asking, because I can't figure this out.

7              You have a Droid, right?  Settings?

8    BY MS. ROOS:

9        Q    No problem.

10       A    Thank you.  Thanks.  Thanks.

11       Q    So you said you try to create opportunities for

12   your clients?

13       A    Yeah, auditions.

14       Q    Auditions?

15       A    Yeah.

16       Q    Is your method for finding auditions for your

17   clients different for your actor clients versus your

18   ex-athlete clients or other types of clients?

19       A    It depends on the profile of the person.  If

20   someone is pretty well-known, it's much easier.  If

21   someone is not as well-known, then it's primarily through

22   submissions through the various information sites as a

23   franchised agent that you subscribe to.

24       Q    When you say "submissions," what do you mean?

25       A    In other words, every time there's a project,

1   there is a -- what's called a breakdown, and in the

2   breakdown, they're very specific of what they're looking

3   for, both ethnicity, age, height, weight, description.

4   They call it narrow casting.

5       Q   And so you get a description of this breakdown?

6       A   All day long, that's what I'm doing.  And in the

7   last, let's say, six, seven years, it's mostly

8   electronic.  It used to be paper submissions and

9   pictures, now it's mostly electronic and talking on the

10  phone.

11      Q   So once you see one of these breakdowns, do you

12  submit something on --

13      A   Yes.

14      Q   -- behalf of your client?

15      A   Yes.  Well, I submit them on the project.

16      Q   Okay.  And how do you submit them?

17      A   Clicking, basically.

18      Q   Does the act of clicking provide any information

19  regarding your client?

20      A   Yes.  It provides a picture.

21      Q   Okay.

22      A   And a lot of the clients who are serious and

23  have been with me for a while have a number of different

24  pictures, so the picture would fit the submission

25  specifically.  In other words, if they were looking for a

1   financial core, which allows an actor to do union and

2   nonunion work because they haven't been able to make

3   enough money doing union work, and -- but you have to

4   give up your SAG card, but they can't prevent you from

5   working and you still have to pay dues.  But that's quite

6   a few people do that, so...

7        Q   Now, you're familiar with Junie Hoang?

8        A   She's sitting right here.

9        Q   And you mentioned she's your client?

10       A   Yes.

11           (Following material designated ATTORNEYS EYES

12   ONLY.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1   BY MS. ROOS:

FILED UNDER SEAL

4            (End of ATTORNEYS EYES ONLY material.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1   BY MS. ROOS:

 2       Q   And in what capacity is she your client?

 3       A   I represent her for commercials and TV, movies.

 4   Not print.  She has a print agent.

 5       Q   Okay.  Do you recall how you first met

 6   Ms. Hoang?

 7       A   I suppose -- no, I don't, but I suppose the way

 8   I meet most people is they submit to me, and looking for

 9   a new agent, and then I either call them or I don't.  I

10   get, literally, hundreds of pictures and resumes every

11   week, and I call maybe 1 percent, and then out of that, I

12   maybe take 5 percent of that 1 percent.

13       Q   Generally, how do you decide which people to

14   take on as clients?

15       A   It depends on the time and what's going on.

16   Probably -- and I don't remember this specifically.  When

17   I took Junie on, there was a lot of projects that

18   involved Asians and Asian women.  And plus, like I said,

19   she spoke fluent Vietnamese.  I didn't have anybody -- I

20   had no Vietnamese clients.  I had a Chinese woman and a

21   couple Japanese women and a Korean woman, so I didn't

22   have a Viet- -- and she was from Texas and spoke Spanish,

23   so -- and then when I talked to her -- it was weird,

24   because she called on the phone and she sounded like

25   somebody from Texas, so that was interesting.  So,

Page 30

1   BY MS. ROOS:

FILED UNDER SEAL

5              (End of ATTORNEYS EYES ONLY material.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 31

1    BY MS. ROOS:

2        Q    When did you learn that?

3        A    When this whole process started.

4        Q    What do you mean by "this whole process"?

5        A    When I found out -- when the news services

6    called, started calling me about the lawsuit against

7    IMDb.

8        Q    Do you recall when that was?

9        A    I don't.

10       Q    Does January 2012 sound about right?

11       A    It's this year, pretty recent, yeah.

12            (Following material designated ATTORNEYS EYES

13   ONLY.)

14

15

16

17

18

19

20

21

22

23

24

25

1    BY MS. ROOS:

FILED UNDER SEAL

8              (End of ATTORNEYS EYES ONLY material.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 33

1   BY MS. ROOS:

2        Q    What do you mean by "playing younger"?

3        A    I would submit her, you know, through the

4   breakdowns, anything from 18, 19, all the way up to 30

5   and sometimes 32.  But very rarely over 32 years old.

6        Q    Have you ever discussed with Ms. Hoang the age

7   range of roles that she could play?

8        A    Absolutely, but that's what our age range was.

9        Q    And when did you first discuss that with

10  Ms. Hoang?

11       A    When I first met her.  I always ask somebody,

12  What do you think you can play?

13       Q    So you asked Ms. Hoang that?

14       A    Yeah.

15       Q    And do you recall what she said?

16       A    I can't tell you specifically, but I can tell

17  you that up until maybe the beginning of this year,

18  possibly - and I can't tell you because I have so many

19  clients - I was -- that's primarily what I was submitting

20  her for.

21            And if -- I try everything.  In other words, I'm

22  looking to get work, so I would try 17 all the way up to

23  35.  Sometimes I'll expand it, sometimes I'll go the

24  other way, depending.  And it's also depending on the

25  pictures, you know.

Page 34

1          So, no, I can't tell you specifically because I

2    don't know.

3       Q   Okay.

4       A   I don't know.

5          (Following material designated ATTORNEYS EYES

6    ONLY.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 35

1    BY MS. ROOS:

FILED UNDER SEAL

13              (End of ATTORNEYS EYES ONLY material.)

14

15

16

17

18

19

20

21

22

23

24

25

1   BY MS. ROOS:

FILED UNDER SEAL

10                  (End of CONFIDENTIAL material.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   BY MS. ROOS:

2        Q    So there were no changes from when you first

3   hired her up until --

4        A    I didn't hire her.  She's not an employee of

5   mine.

6        Q    Sorry.  I misspoke.

7             There were no changes from when you first became

8   her agent up until about January 2012, when you first

9   heard of the lawsuit?

10            MR. SZEGO:  Object to form.

11  BY MS. ROOS:

12       Q    Is that right?

13       A    Yeah, I would say that's fairly accurate.

14       Q    Why do you say "fairly accurate"?

15       A    Well, I don't know.  My business is not like a

16  normal business, so I can't tell you -- I've been doing

17  it so long, I can't tell you what I do on a day-to-day --

18  what a day-to-day business day and how things are the

19  same or not the same.

20       Q    But no changes come to mind?

21       A    Not really.

22       Q    Okay.

23       A    Not really.

24       Q    Do you have any knowledge regarding Ms. Hoang's

25  income from acting?

Page 44

1      A   No.

2      Q   Do you have knowledge about how much money you

3  make through --

4      A   Yes.

5      Q   -- Ms. Hoang?

6      A   Yes.

7      Q   Yes.

8          Do you keep records regarding your income based

9  on which client it comes in from?

10     A   No.  No.

11     Q   So if I were to ask you how much you have made

12  through Ms. Hoang --

13     A   I can't tell you.  I can't tell you.  I cannot

14  tell you.

15     Q   What sort of records do you keep when a client

16  pays you?

17         (Interruption in proceedings.)

18         THE WITNESS:  Excuse me.  Oh, sorry.

19         Well, I mean, I have an accountant and I pay all

20  my taxes, but I don't really keep those records unless

21  somebody sends me a stub or a copy of the stub, payment

22  stub.

23  BY MS. ROOS:

24     Q   Does Ms. Hoang send you copies of her payment

25  stubs?

1   BY MS. ROOS:

FILED UNDER SEAL

FILED UNDER SEAL

Page 49

1    BY MS. ROOS:

2        Q    Okay, they go through the Web site?

3        A    They go through the Web site.  So you'd have to

4    contact the Web sites to, in fact, see what all the

5    submissions were.

6        Q    And then you'd get --

7        A    I don't get any reports or anything like that,

8    no.

9        Q    Sure.  Sure.

10            Do you always get an e-mail when there's an

11   audition, or does sometimes a submission come through

12   those Web sites?

13       A    The e-mail comes from the Web sites.

14       Q    Okay.  So they always come directly to your

15   account.

16       A    Not always.  Sometimes they call, but most of

17   the time it's through an e-mail, yes.  But sometimes they

18   actually call and say, We want to see her at this time.

19   And a lot of times, at the last minute, if an e-mail

20   didn't go out, they would call.

21       Q    Are you able to go into your accounts for these

22   Web sites, Actors Access and Casting Now and, I think,

23   Casting Frontier, you said, and look at your submission

24   history?

25       A    I don't think so.  I don't.  But there might be

Page 50

1    a way to do it, but I don't know how to do it, nor do I

2    do it.

3              (Following material designated CONFIDENTIAL.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 51

1    BY MS. ROOS:

FILED UNDER SEAL

FILED UNDER SEAL



FILED UNDER SEAL



1    BY MS. ROOS:

2        Q    "All of them" being?

3        A    That she paid me on.

4        Q    Okay.

5        A    Those, I didn't create any of those things at

6    all.

7        Q    And those are the jobs that she's received

8    recently?

9        A    Yes.

10       Q    Do you have any knowledge regarding the monetary

11   value of the jobs that she has lost out on?

12       A    No.

13       Q    Do you have any knowledge regarding the monetary

14   value of the auditions that she has lost out on?

15       A    No.  That's a really nebulous question.

16       Q    Why do you think it's a nebulous question?

17       A    Because auditions are -- you know, to quantify

18   value of auditions, because I can't charge for auditions.

19   And also, you can go out on a hundred auditions and get

20   nothing, or you can go out on one audition and get it, or

21   two auditions and get it.  So to put a value on that is,

22   literally, impossible.  And there's no one in the world

23   that could do that.

24       Q    It's an uncertain -- even if someone gets an

25   audition, it's uncertain they'll get the job.

Page 57

1          MR. SZEGO:   Object to form.

2          THE WITNESS:   They have a chance.   At least they

3    have a chance, yeah.

4    BY MS. ROOS:

5       Q    Right.

6       A    No audition, no chance.

7       Q    But it's impossible to quantify the value of the

8    auditions.

9       A    Yeah.   Except for the fact that you have a

10   chance, yeah.

11      Q    Is it also impossible to quantify the value of

12   jobs lost out on?

13      A    Again, if you don't get an audition, you don't

14   get a chance.   If you have less auditions, you have less

15   chances.   It's probability.

16          (Following material designated CONFIDENTIAL.)

17

18

19

20

21

22

23

24

25

Page 58

1   BY MS. ROOS:

FILED UNDER SEAL

FILED UNDER SEAL

10                (End of CONFIDENTIAL material.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Defendant Exhibit 6 was marked

2          for identification by the reporter.)

3          THE WITNESS:  What is this?

4    BY MS. ROOS:

5      Q   I'm handing you what has been marked as Exhibit

6    6.

7          Have you seen that before?

8      A   No.

9      Q   Okay.  For the record, this document is

10   Plaintiff's Third Supplemental Objections and Responses

11   to Defendant's Interrogatories and Request For Production

12   to Plaintiff.

13         I'm going to actually direct you to -- let's

14   see.

15         MR. SZEGO:  Before you do that, I'm going to

16   note, this document has information that's been marked

17   confidential by the plaintiff.

18         We didn't discuss on the record the arrangements

19   that we had made regarding designating confidential

20   material.  Do you want to do that now?

21         MS. ROOS:  Sure.

22         MR. SZEGO:  And my understanding is

23   Mr. Kolkowitz has signed a confidentiality agreement?

24         THE WITNESS:  Yes.

25         MS. ROOS:  Yes, he has.

Page 65

1          MR. SZEGO:  Go ahead.

2          MS. ROOS:  So just for the record, the

3   arrangement we will follow with counsel is that the

4   deposition will be treated as attorneys' eyes only until

5   counsel has made plaintiff's confidentiality

6   designations.

7          I believe the court reporter will circulate a

8   draft with which counsel can make the designations within

9   seven days, then those designations will go into the

10  final.

11         Is that accurate?

12         MR. SZEGO:  That's my understanding.  There's

13  been some confusion as to -- some of the transcripts

14  we've dealt with in the past, we end up getting, it says

15  ten days in the e-mail as opposed to seven days.  So as

16  long as it reflects seven days specifically in the rough

17  or the e-mail, that's fine.  Just make sure we know how

18  many days you want it in.

19         I also understand, you will include a copy of

20  the exhibits as a PDF, or something like that, with the

21  transcript of the rough.  Is that correct?

22         THE REPORTER:  Sure.

23         THE WITNESS:  Is there a reason why I have this?

24  BY MS. ROOS:

25     Q   Yes.  I'm going to ask you a question about it

1   right now.

2            If you could turn to page 10.

3       A   Okay.

4       Q   And towards the bottom of the page,

5   interrogatory 6 asks, "Identify each person with

6   knowledge of your alleged damages."

7            Am I reading that accurately?

8            MR. SZEGO:  Object to form.

9            THE WITNESS:  What am I looking at, I'm sorry?

10  BY MS. ROOS:

11      Q   If you look at interrogatory number 6.

12      A   Where is number 6?

13      Q   About a quarter down.

14      A   Oh, up here, 6?

15      Q   No, towards the bottom.  I'll direct you.

16           See interrogatory number 6?

17      A   Oh, I see, I'm sorry.  Excuse me.

18      Q   No problem.

19      A   "Identify each..."

20      Q   And I'll just give you a minute to read the

21  response as well.

22           MR. SZEGO:  While he's reviewing that, can we go

23  off the record for just a second?

24           MS. ROOS:  Sure.  Go off the record.

25           (Discussion held off the record.)

```
                                                    Page 67

   1          MS. ROOS:  We can go back on the record.

   2      Q   So you've had a chance to review interrogatory

   3   number 6 and the answer?

   4      A   Yeah.

   5          (Following material designated CONFIDENTIAL.)

   6

   7

   8

   9

  10

  11

  12

  13

  14

  15

  16

  17

  18

  19

  20

  21

  22

  23

  24

  25
```

Page 68

1   BY MS. ROOS:

FILED UNDER SEAL

FILED UNDER SEAL

FILED UNDER SEAL

5          (End of CONFIDENTIAL material.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 78

1   BY MR. SZEGO:

FILED UNDER SEAL

12              (End of ATTORNEYS EYES ONLY material.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 84

1      Q    And was that before or after you -- before or

2   after she had a reduction in her number of auditions?

3           MS. ROOS:  Object to form.

4           THE WITNESS:  I'm not -- I'm not sure.  I mean,

5   I can't answer that question.

6   BY MR. SZEGO:

7      Q    Please answer any questions counsel may have.

8                    FURTHER EXAMINATION

9   BY MS. ROOS:

10     Q    Mr. Kolkowitz, you spoke a little bit about your

11  use of IMDb.

12          Have you ever made a submission to IMDb?

13     A    No.

14     Q    No?  Okay.

15          And you also mentioned that it's possible that

16  the reduction in Ms. Hoang's roles and auditions was due

17  to her age?

18     A    Possibly.

19          MR. SZEGO:  Object to form.

20  BY MS. ROOS:

21     Q    But you don't know that her age is the cause of

22  any decrease in her --

23     A    I don't know that for a fact.

24     Q    -- her auditions.

25          Just to make sure it's clear - we're sort of

Page 85

1   talking over each other - I'm going to ask it again.

2         You don't know whether her age contributed to

3   any loss in jobs or auditions.

4         MR. SZEGO:  Object to form.

5         THE WITNESS:  I don't know that.

6         MS. ROOS:  I think that's all the questions I

7   have.

8         MR. SZEGO:  That's it.

9         MS. ROOS:  We can go off the record.

10        (The deposition was concluded at 10:04 a.m.)

11  //

12  //

13

14

15

16

17

18

19

20

21

22

23

24

25