UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HUONG HOANG, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC., a Delaware corporation, and IMDB.COM, INC., a Delaware corporation,<br><br>    Defendants. | CASE NO. C11-1709MJP<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the cross motions for summary judgment filed by Plaintiff Huong Hoang (Dkt. No. 109), Defendant Amazon.com, Inc. (Dkt. No. 84), and Defendant IMDb.com, Inc. (Dkt. No. 82). Having reviewed the motions, the response briefs (Dkt. Nos. 121, 122, 134), the reply briefs (Dkt. Nos. 129, 130, 138), and all related filings, and having heard the oral argument of the parties, the Court enters the following ORDER:

The Court DENIES Plaintiff's motion for summary judgment. The Court DENIES Defendant IMDb's motion for summary judgment on the breach of contract claim because genuine issues of material fact exist about whether IMDb's actions constituted a response to

1 | Plaintiff's repeated requests. The Court GRANTS Defendant IMDb's motion for summary

2 | judgment on the Consumer Protection Act claim because Plaintiff cannot show that the public

3 | interest is impacted by IMDb's actions. The Court GRANTS Defendant Amazon.com's motion

4 | for summary judgment because there is no evidence Amazon was involved in any of the alleged

5 | wrongdoing and because Plaintiff fails to show that exceptional circumstances warrant holding

6 | Amazon liable for the actions of its subsidiary.

7 | **Background**

8 |       Plaintiff Huong Hoang signed up for the IMDbPro service in 2004. (Dkt. No. 109 at 11.)

9 | That service is governed by a subscriber agreement, which incorporates a related privacy notice.

10 | (Dkt. No. 100-6 at 2.) The privacy notices tells subscribers: "You can choose not to provide

11 | certain information, but then you might not be able to take advantage of many of our features."

12 | (Dkt. No. 100-7 at 2.) Under the heading "Does IMDb Share the Information It Receives?," the

13 | privacy notice tells subscribers "you will always receive notice when information about you

14 | might go to third parties, and you will have an opportunity to choose not to share the

15 | information." (Id.) Under the heading "How Secure Is Information About Me?," IMDb promises

16 | subscribers, "If you use our subscription service, we work to protect the security of your

17 | subscription information during transmission by using Secure Sockets Layer (SSL) software,

18 | which encrypts information you input." (Id.)

19 |       The parties do not dispute the central facts of this case. Plaintiff is an aspiring actress.

20 | (Dkt. No. 109 at 6.) Because her given name is difficult to pronounce, she goes by the stage

21 | name of "Junie Hoang." (Id.) Defendant IMDb.com, Inc. ("IMDb"), a subsidiary of Defendant

22 | Amazon.com, Inc. ("Amazon"), owns and operates the Internet Movie Database, at

23 | www.imdb.com, which displays information about movies, television shows, and people in the

24 |

1  entertainment industry. (Dkt. No. 82 at 8.) IMDb also offers a subscription service, IMDbPro,
2  which allows actors to create their own profile pages and to access job listings, company contact
3  information, and a people database for industry professionals. (Dkt. No. 109 at 9.) One of
4  IMDb's main goals is to ensure that information on its website is complete and accurate. (Dkt.
5  No. 82 at 9.)

6       Plaintiff has a long history with IMDb. Hoang initially signed up for IMDb in 2001
7  "[b]ecause it's the bible of the industry." (Dkt. No. 133-1 at 40-41.) She started adding
8  information, including acting credits, to her profile in 2003. (Id.) In 2004, Hoang signed up for a
9  free trial of IMDbPro, and over the next several years, she paid, using her credit card, for various
10 one-time services, such as posting a photograph or resume on her profile page. (Id. at 43-46.) In
11 2008, Hoang signed up and paid to use the IMDbPro service on an ongoing basis. (Id.)

12      Hoang wanted the benefits of being visible on IMDb, but she didn't want her true age to
13 become public. When Hoang first signed up for IMDb, she left her age blank, as was her right.
14 (Dkt. No. 109 at 11.) In June 2004, Hoang used her friend Greg Carter's IMDb account to submit
15 a 1978 date of birth for her profile, even though her true date of birth was seven years earlier, in
16 1971. (Dkt. No. 133-1 at 100.) In September 2007, Hoang decided that she no longer wanted the
17 false 1978 birth date, and began repeatedly contacting IMDb, asking for the 1978 birth date to be
18 removed from her profile. (Id.) IMDb told her it would take prompt measures to remedy any
19 verifiable inaccuracies. (Dkt. No. 82 at 10.) Hoang sent IMDb a number of documents purporting
20 to show her listed birth date was wrong, including a scanned copy of a fake Texas ID, but none
21 of them were satisfactory to IMDb, and IMDb did not remove the 1978 date from her profile
22 page. (Id.)

The situation reached a head in October 2008, when Hoang sent an email asking IMDb, "Please go back on your files and see if you have any documentation, verification, or identification that my birthdate is in 1978." (Dkt. No. 133-13 at 2.) The email continued, "If you do, please email it to me because I'm curious to see what you're going off of." (Id.) Interpreting this email as an invitation to begin investigating, an IMDb customer service manager, Giancarlo Cairella, searched public records for "June Hoang," but was unable to find a birth date. (Dkt. No. 85 at 4.)

Ciarella then accessed IMDb's "IPS database," which contains subscriber information that customers submit when paying to subscribe to IMDbPro. (Id.) In the IPS database, Ciarella found Hoang's legal name, Huong Thu Hoang, which Plaintiff submitted in 2004 when she signed up for the free trial of IMDbPro. (Id.) This was the only place Plaintiff's full name was available to him. (Id.) Armed with this information, Ciarella searched a public records database called PrivateEye, which returned a result showing that "Huong Thu Hoang" had a birth date with the same month and day that Plaintiff's profile indicated, but in 1971. (Id.) Satisfied that he had resolved the mystery of Hoang's birth date, Ciarella directed IMDb's data content team to publish Plaintiff's correct birth date on her profile page. (Id.) Even after her true birth date was published online, Hoang continued to press ahead with her false information campaign, sending IMDb links to her fake passport to "correct/delete [her] birthdate." (Dkt. No. 93-7 at 2.)

In her motion, Plaintiff asks the Court to find that IMDb's actions constituted breach of its subscriber agreement and a violation of Washington's Consumer Protection Act, RCW 19.86. (Dkt. No. 109 at 25.) She also asks the Court to issue an injunction requiring IMDb to immediately remove Hoang's birth date from her profile page, and allow a jury to determine the damage amount. (Id.) Defendant Amazon.com, Inc. asks to be dismissed because it was not

involved in the alleged wrongdoing, and because Plaintiff has failed to show exceptional circumstances that merit piercing the corporate veil. (Dkt. No. 84.)

Defendant IMDb makes a number of counterarguments. First, IMDb asserts that the doctrine of unclean hands makes Hoang ineligible for relief because "[h]er misrepresentations set this entire chain of events in motion, and she is ultimately asking this Court to reward her for lying." (Dkt. No. 82 at 17.) IMDb asserts that it did not breach its subscriber agreement because that agreement provides that IMDb will use customer information "for such purposes as responding to [customer] requests[.]" (Dkt. No. 82 at 19.) Even if it did breach its agreement, IMDb asserts that Plaintiff fails to show she suffered any economic loss as a result of IMDb's actions. (Id. at 23.) IMDb also argues that Plaintiff is barred from recovering consequential damages by the waiver provision in the subscriber agreement. (Id. at 26.) IMDb lastly argues that Plaintiff's CPA claims should be dismissed because she fails to establish that IMDb's conduct had the capacity to deceive a substantial portion of the public and because she has not established that IMDb's conduct impacts the public interest. (Id. at 27-29.)

## Discussion

A. Legal Standard

Federal Rule 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a factual dispute requiring trial exists, the court must view the record in the light most favorable to the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255. All material facts alleged by the non-moving party are assumed to be true, and all inferences must be drawn in that party's favor. Davis v. Team Elec. Co., 520 F.3d 1080, 1088 (9th Cir. 2008).

A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When a lawsuit consists of multiple causes of action, the court may grant summary judgment on all or any part thereof. Fed. R. Civ. P. 56(a).

B. Liability of Amazon.com

The Court grants Defendant Amazon's motion for summary judgment because there is no evidence Amazon was involved in any of the alleged wrongdoing, and because Plaintiff fails to show that exceptional circumstances warrant holding Amazon liable for the actions of its subsidiary. Plaintiff's breach of contract claim against Amazon.com fails because Amazon is not a party to the contract upon which Plaintiff's claim is based. (Dkt. Nos. 100-6, 100-7.) And while IMDb's website contains various statements regarding the processing of payments by Amazon, these statements are made by IMDb, not Amazon. (Dkt. No. 45-1 at 6-9.)

Plaintiff also fails to show that Amazon was involved in any of the acts that gave rise to her CPA claim. IMDb and Amazon do not have common access to each other's customer information databases, and they do not share or exchange any such customer information. (Dkt. No. 90 at 2.) The fact that Amazon generally provides legal counsel to its subsidiary is insufficient to show that Amazon "participated in IMDb's decision to violate privacy laws." (Dkt. No. 121 at 6); see State v. Ralph Williams' N.W. Chrysler Plymouth, Inc., 87 Wn.2d 298, 322 (1976) (joint liability exists where corporate officer participates in wrongful conduct, or with knowledge approves of wrongful conduct). Lastly, the fact that Giancarlo Ciarella, the IMDb manager, listed Amazon as a secondary employer on the career social networking site Linkedin.com fails to show that he acted as an Amazon employee. (Dkt. No. 111-6 at 17-18.)

Plaintiff also fails to show that the Court should disregard Amazon's corporate form. Piercing the corporate veil is a rare "equitable remedy imposed to rectify an abuse of the corporate privilege." Truckweld Equip. Co., Inc. v. Olson, 26 Wn. App. 638, 643-44 (1980). Washington recognizes two distinct circumstances where courts may disregard the corporate form. First, a court may disregard the corporate form when there is an "overt intention" to use the corporate form to "avoid a duty owed." Minton v. Ralston Purina Co., 146 Wn.2d 385, 398 (2002). Second, courts may disregard the corporate form where the corporate subsidiary is an alter ego of the parent. Grayson v. Nordic Constr. Co., 92 Wn.2d 548, 553 (1979). Plaintiff's allegations here, even when viewed in the light most favorable to her, fail to meet these stringent requirements. The fact that Amazon and IMDb share payment systems and legal counsel, and that their employees sometimes interact, does not demonstrate any intention to shirk a duty or suggest that Amazon disregarded IMDb's separate existence. Amazon is dismissed.

C. Unclean Hands Doctrine

Although Hoang's hands are dirty from repeatedly lying about her age, making demands upon IMDb that she knew could not be fulfilled due to her own deception, and finally forging government documents,[1] the unclean hands defense is not applicable to this case. The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (1985) (citations omitted). "In applying the doctrine, what is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts[.]" Id. The present dispute concerns whether IMDb violated its promise about how it would handle Plaintiff's personal information

---

[1] 18 U.S.C. § 1028 makes it a felony to produce, possess, or use false U.S. identification documents. (See Dkt. No. 94-1 at 2 (image of Plaintiff's fake U.S. passport).)

and whether such actions constitute a violation of Washington's CPA. (Dkt. No. 122 at 11.) IMDbPro makes the same promise to every subscriber as part of its form subscriber agreement and incorporated privacy policy. (Dkt. Nos. 100-6, 100-7.) In this case, Plaintiff's unclean hands played no part in acquiring the right she asserts—that IMDb promised to safeguard subscriber information. Ellenburg, 763 F.2d at 1097. Plaintiff acquired that right the same way every subscriber did—simply by subscribing. The unclean hands doctrine does not apply to her contract claim.

D. Breach of Contract

The Court denies summary judgment on Plaintiff's breach of contract claim because there is a genuine issue of material fact about whether IMDb used Plaintiff's confidential information in violation of its agreement. To prove a breach of contract claim, a plaintiff must establish (1) the existence of a contract that imposes a duty, (2) a breach of the duty, and (3) and economic loss as a result of the breach. Meyers v. State, 152 Wn. App. 823, 827-28 (2009). The parties do not dispute that the subscriber agreement and incorporated privacy policy constitute a valid contract. (Dkt. No. 82 at 19; Dkt. No. 109 at 15.) However, there are disputed issues of fact about whether breach has occurred and whether there has been economic loss as a result of any breach.

In particular, IMDb's argument that it did not breach the contract because it was responding to Plaintiff's request raises genuine fact issues. The privacy policy states, in part, "We use the information that you provide for such purposes as responding to your requests[.]" (Dkt. No. 100-7 at 2.) IMDb asserts that it did not breach its policy because Plaintiff demanded that IMDb "GO BACK ON YOUR FILES" to investigate her claims. (Dkt. No. 82 at 20.) In her October 1, 2008 email to IMDb, Plaintiff wrote, in relevant part:

> PLEASE GO BACK ON YOUR FILES AND SEE IF YOU HAVE ANY DOCUMENTION, VERIFICATION, OR IDENTIFICATION THAT MY BIRTHDATE IS IN 1978. IF YOU DO, PLEASE EMAIL IT TO ME BEAUSE I'M CURIOUS TO SEE WHAT YOU'RE GOING OFF OF. IF YOU DON'T FIND ANY PROOF ON RECORD, PLEASE DELETE IT BECAUSE I KNOW THAT 1978 ISN'T MY DATE OF BIRTH. (Dkt. No. 82 at 11.)

Plaintiff never asked IMDb to use her credit card information to initiate a new search, but she did ask IMDb to search its files, knowing all the while that she herself had provided the false 1978 date, and that IMDb therefore would not find the "verification" she requested. (Id.) Based on this evidence, a jury could reasonably conclude that IMDb "responded" to Plaintiff's request by searching its files, and then acted in accordance with its mission of providing accurate information by posting Plaintiff's true age on its website. (Id.)

Plaintiff's October 1, 2008 email, together with her long history of correspondence with IMDb, shows what could be interpreted not as a breach, but as an effort to respond to customer demands. (See Dkt. Nos. 93-6, 93-7.) Therefore, genuine issues of material fact exist about whether IMDb breached its subscriber agreement and privacy notice, so summary judgment is inappropriate on Plaintiff's breach of contract claim.

### E. Damages Limitation Clause

IMDb asserts that two provisions in the IMDbPro subscriber agreement explicitly limit Plaintiff's damages to the amount she paid for her IMDbPro subscription. (Dkt. No. 82 at 26-27.) Applying these provisions would allow Plaintiff to seek injunctive relief and recover the amount she paid to IMDb, but no more. (Id.) The provisions state:

> 11. Limitation of Damages
>
> IN NO EVENT WILL IMDB OR ANY OF ITS AFFILIATES BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, OR SPECIAL DAMAGES WHATSOEVER, INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF PROFITS, BUSINESS INTERRUPTION, LOSS OF OR UNAUTHORIZED ACCESS TO INFORMATION, AND THE LIKE, EVEN IN THE EVENT OF FAULT, TORT,

BREACH OF CONTRACT, OR BREACH OF WARRANTY, AND EVEN IF IMDB HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

12. Limitation of Liability; Exclusive Remedy

ALSO, IN NO EVENT WILL IMDB OR ANY OF ITS AFFILIATES BE LIABLE TO YOU AND/OR ANY AGENCY FOR ANY AMOUNT IN EXCESS OF THE TOTAL DOLLAR AMOUNT ACTUALLY RECEIVED FROM IMDB FOR ACCESS TO THE SITE AND ANY OF THE SERVICES AVAILABLE AT THE SITE DURING THE YEAR PRIOR TO YOUR CLAIM. (Dkt. No. 100-6 at 3.)

Under Washington law, these provisions are unconscionable because they impose a unilateral restriction that severely impairs a consumer's ability to recover damages. See Am. Nursery Prods. v. Indian Wells Orchards, 115 Wn.2d 217, 223 ("In order to uphold an exclusionary clause in the consumer sales context, the clause must be explicitly negotiated between buyer and seller and the remedies being excluded must be set forth with particularity" (citations omitted)).

"Substantive unconscionability involves those cases where a clause or term in the contract is one-sided or overly harsh." McKee v. AT&T Corp., 164 Wn.2d 372, 396 (2008). In McKee, the Washington Supreme Court held that a class action waiver in a consumer contract was unconscionable because, in cases brought by a consumer where a contract capped damages at a very small amount, "the agreement effectively, if not explicitly, exculpated [defendant] for potentially widespread misconduct." Id. at 397. Although McKee involved a class action waiver, not a cap on consequential damages, its logic is equally applicable to this matter. Were IMDb permitted to bar Plaintiff from recovering more than the amount she paid IMDb for her subscription, it would essentially create a situation where "no attorney would be willing to undertake individual [cases] to recover the trivial amounts of money at stake[.]" Id.

The cases cited by IMDb are inapposite because they arise in the commercial context, where the parties have ability to seek advice and alternative offers, and do not involve situations

where the "costs of pursuing the claim far outweigh the amount in controversy." Id. at 398 n.12. IMDb cites M.A. Mortenson Co. v. Timberline Software Corp., 140 Wn.2d 568, 585 (2000), for the proposition that parties may limit damages recoverable by contract. (Dkt. No. 82 at 27.) But in Mortenson, the parties were both large companies and there was no indication that the limitation clause would effectively insulate the defendant from all liability. Id. at 587. The present case is also distinguishable from Satomi Owners Ass'n v. Satomi, LLC, a case where the Washington Supreme Court held a unilateral provision giving only the building company defendant the option to select arbitration was not unconscionable because arbitration was not inherently more or less fair than litigation. 167 Wn.2d 781, 815-16 (2009). The present case is actually more like the case Satomi distinguishes, Zuver v. Airtouch Commc'ns, Inc., where the Washington Supreme Court held a unilateral arbitration clause was unconscionable because it prohibited plaintiff from collecting punitive damages, while imposing no similar prohibition on defendant. 153 Wn.2d 293, 318-19 (2004). The unilateral damages limitation clause here is unconscionable because, like the clause in Zuver, it blocks the full recovery of damages for only one party Id. at 319 n.16.

F.  Damages

Plaintiff explicitly seeks to recover two types of damages: (1) the value of her consumer data, which she terms "non-career" damages; and (2) her lost acting income, which she terms "career damages." (Dkt. No. 122 at 12-16.) In her motion for summary judgment, Plaintiff explains that she also seeks nominal damages for her breach of contract claim and emotional distress damages for the feeling of violation she experienced. (Dkt. No. 109 at 18-19.) She also seeks to recover her direct losses, i.e., the money she spent on her IMDbPRo subscription. (Dkt. No. 122 at 16.)

Of these different types of damages, Plaintiff may only seek nominal damages, direct losses, and "career" damages. As a matter of law, emotional distress damages are not recoverable in a breach of contract action. See Gaglidari v. Denny's Rests., 117 Wn.2d 426, 432 (1991); see also Pettaway v. Commercial Auto. Serv., 49 Wn.2d 650, 655 (1957) ("emotional reactions peculiar to a particular individual . . . are too subjective and variable to be contemplated prior to a breach of contract, or ascertainable afterward"). Emotional distress damages are also beyond those contemplated by the CPA, which allows for a plaintiff to recover injuries "in his or her business or property." RCW 19.86.090.

Plaintiff's claim for "non-career damages" also fails. In her response to IMDb's motion for summary judgment, Plaintiff asserts, for the first time, that her "personal information is inherently valuable," and that "she lost the value of her private information that she would not have disclosed or otherwise charged money to give up." (Dkt. No. 122 at 12-13.) Pursuant to Federal Rule 37(c), Plaintiff is barred from recovering these damages because she failed to disclose this damages theory in her initial disclosures or in any of her three damages calculations during discovery. (Dkt. Nos. 93-2, 100-5.) Plaintiff is also barred because this alleged injury is overly vague and it relies on the "abstract concept of opportunity costs." See Goodman v. HTC America, Inc., Case No. C11-1793MJP, Dkt. No. 63 at 13; see also LaCourt v. Specific Media, Inc., 2011 WL 1551532 at 5 (C.D. Cal. April 28, 2011). Accepting Plaintiff's assertion that she would have "charged money to give up" her full name and birth date would amount to the Court creating a new theory of injury, which is typically the province of the legislature. (Dkt. No. 122 at 13.) See Duncan v. N.W. Airlines, Inc., 203 F.R.D. 601, 606 (W.D. Wash. 2001).

Plaintiff may seek nominal damages, the costs of her IMDbPro subscription, and career damages she can prove. Where liability is established, but the extent of loss is difficult to

calculate, nominal damages are available. See Wenzler & Ward Plumbing & Heating Co. v. Sellen, 53 Wn.2d 96, 100 n.5 (1958). Plaintiff's career damages are also recoverable. In Washington, lost profits are recoverable when (1) they are within the contemplation of the parties at the time the contract was made, (2) they are the proximate result of defendant's breach, and (3) they are proven with reasonable certainty. Larsen v. Walton Plywood Co., 65 Wn.2d 1, 15 (1964). Here, IMDb's advertisements for IMDbPro—which include statements such as "Your IMDb page is your industry calling card" and "Add over 200,000 Hollywood insiders to your Rolodex"—make clear that one goal of IMDb is to increase actors' profits. (Dkt. No. 115-22 at 2.) Therefore, it was foreseeable that breach of the IMDbPro privacy notice could have an impact on Plaintiff's career. Whether Plaintiff's "career damages" are the proximate result of Defendant's actions and whether they are reasonably certain are genuine issues of material fact, which must be decided by the jury.

IMDb's request for summary judgment on the issue of damages is denied because, when the evidence is viewed in the light most favorable to Plaintiff, fact issues remain. IMDb argues that four major casting websites "show that [Plaintiff] has actually received *more* auditions per submission since 2008." (Dkt. No. 82 at 24 (Defendant's emphasis).) In contrast, Plaintiff asserts that the online history does not reflect a number of submissions, and she offers a declaration stating that her auditions are down by 50 percent. (Dkt. No. 122 at 13-14.) The parties also disagree about the importance of Plaintiff's tax returns: IMDb argues that they are the "only arguably objective evidence regarding Hoang's earnings," while Plaintiff explains that "[m]any of Hoang's acting jobs were low-paying, and paid in cash without any documentation." (Dkt. No. 82 at 25; Dkt. No. 112 at 15.) These are classic fact issues, and they preclude the Court from entering summary judgment on the issue of damages.

G. <u>Consumer Protection Act Claim</u>

The Court grants summary judgment in favor of IMDb on Plaintiff's CPA claim because Plaintiff cannot show that IMDb's conduct impacts the public interest. To prevail in a private action under the CPA, RCW 19.86, a plaintiff must establish "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and (5) such injury is causally linked to the unfair or deceptive act." <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 780 (1986). "[W]hether the public has an interest in any given action is to be determined by the trier of fact from several factors[.]" <u>Hangman Ridge</u>, 105 Wn.2d at 789. In a consumer protection case, the relevant factors include: "(1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?" <u>Id.</u> at 790.

Here, there is no genuine issue of material fact that IMDb's act of using IMDbPro subscriber information to verify information on its website is not part of a pattern, and there is no real or substantial potential for repetition. While Plaintiff asserts that "IMDb recently ran 24 PrivateEye searches on other actors besides Hoang," Defendant presents undisputed evidence that "[n]one of those searches were preformed [sic] using information submitted by the subject of the search when registering for IMDbPRo." (Dkt. No. 109 at 23; Dkt. No. 134 at 27.) The fact that IMDb performed other PrivateEye searches is irrelevant to this determination, because this case is about the alleged misuse of IMDbPro subscriber information. Plaintiff does not contest Defendant's assertion that, in every other case where IMDb has used a PrivateEye search, "the

name searched was obtained from the IMDb profile at issue or some other public source. (Dkt. No. 134 at 27.) Even when the evidence is viewed in the light most favorable to Plaintiff, it is clear that there is no pattern or generalized course of conduct, no repeated acts prior to the act involving Plaintiff, and no real and substantial potential for repetition of Defendant's conduct. The Court therefore grants Defendants summary judgment on Plaintiff's CPA claim.

## Conclusion

Because genuine issues of material fact exist regarding whether IMDb was responding to Plaintiff's request, the Court DENIES summary judgment on the breach of contract claim. Because IMDb's conduct does not impact the public interest, the Court GRANTS IMDb's motion for summary judgment on the CPA claim. The Court GRANTS Defendant Amazon's motion for summary judgment because there is no evidence Amazon was involved in any of the alleged wrongdoing and because Plaintiff fails to show that exceptional circumstances warrant holding Amazon liable for the actions of its subsidiary.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 18th day of March, 2013.

Marsha J. Pechman
United States District Judge